## ELLISON *v.* OLIVER.

### Opinion delivered January 31, 1921.

1. STATES—CONTRACT FOR PUBLIC PRINTING—APPROVAL.—The requirement of Constitution 1874, article 19, § 15, that public printing shall be performed under contract awarded to the lowest possible bidder subject to approval by the Governor, Auditor and Treasurer is mandatory.

2. CONSTITUTIONAL LAW—CONSTRUCTION BY SILENCE OF COURT.—The construction of a provision of the Constitution is a matter of too much public importance to be concluded by the mere omission of the court to pass upon a question in a given action unless the decision of the case necessarily involves a construction of such provision.

3. STATES—BOARD FOR LETTING CONTRACTS.—Under Constitution, article 19, § 15, requiring State printing contracts to be approved by the Governor, Auditor and Treasurer, the Legislature could not make such officers a board for the letting of such contracts, as the Constitution impliedly requires the approval of contracts by them to be separate from the act of letting them.

4. STATES—APPROVAL OF PUBLIC CONTRACTS.—The "approval" of public contracts by the Governor, Auditor and Treasurer means the approval by each of the above officers separately, and not as a board, so that the approval of two of the three officers is not sufficient.

5. CONSTITUTIONAL LAW—FUNCTION OF COURTS.—In construing a provision of the Constitution, the courts have nothing to do with its wisdom or expediency.

6. EVIDENCE—PRESUMPTION THAT OFFICERS WILL PERFORM DUTIES.— The courts will not presume that either the Governor, Auditor or Treasurer, in performing their duties under Constitution 1874, article 19, § 15, will wilfully or capriciously withhold his approval from a public contract, but will presume that each officer will perform the duty imposed upon him by the Constitution without regard to any supposed public or private advantage to himself.

7. CONSTITUTIONAL LAW — CONSTRUCTION OF UNAMBIGUOUS LANGUAGE.—Where the language used in a constitutional provision is plain and unambiguous, the court can not seek other aids of interpretation.

8. STATES—APPROVAL OF PRINTING CONTRACT.—Under Constitution, article 19, § 15, requiring printing contracts to be approved by the Governor, Auditor and Treasurer, a contract approved by the Governor, Secretary of State and Treasurer, but not by the Auditor, is void.

9. STATES—APPROPRIATION FOR ADDITIONAL WORK.—Under Constitution, article 5, § 29, prohibiting appropriations for a longer period than two years, and article 16, § 12, requiring payments only in accordance with appropriations, Acts 1919, page 186, appropriating a sum for reprinting the Supreme Court Reports can not be construed as an appropriation to carry out a contract for printing such reports entered into under Acts 1917, vol. 2, p. 1217, and no payments can be made under the act of 1919 without letting a new contract.

10. STATES—LETTING OF PUBLIC CONTRACTS.—Under Acts 1919, page 186, appropriating a sum for reprinting the Supreme Court Reports, a contract which was not let to the lowest bidder, as required by Constitution, article 19, § 15, was void.

11. STATES—CONTRACTOR ACTING IN GOOD FAITH UNDER VOID CONTRACT. —The fact that a contractor printed books for the State in good faith believing that his contract was valid and that the work was done to the State's advantage, would not authorize the courts to deny injunction against the enforcement of an invalid contract.

Appeal from Pulaski Chancery Court; *Jno. E. Martineau*, Chancellor; reversed.

STATEMENT OF FACTS.

Appellants brought this suit in equity against appellees to restrain them from proceeding further in carrying out an alleged contract for the reprinting and binding of certain Supreme Court Reports.

The facts are as follows: Appellants are citizens and taxpayers of the State of Arkansas. The Legislature of 1917 passed act 226 providing for the reprinting and sale of certain Arkansas Supreme Court Reports. Pursuant to the act the Governor, the Auditor and the Secretary of State advertised for bids for the printing and binding of certain volumes of the Supreme Court Reports, and C. C. Calvert submitted a written proposal to do the work. This bid was accepted, and the Governor, Secretary of State, and the Auditor of State, purporting to be the board of commissioners to let public contracts, entered into a written contract with the Calvert-McBride Printing Company of Fort Smith, Ark., for printing and binding 500 copies of certain volumes of the Arkansas Supreme Court Reports. The contract was signed by the Governor, as president of the board, and by the Auditor of State and the Secretary of State. The minutes of the board approving the contract were written up and signed by the Governor, Secretary of State, and the Auditor of State. The printing company entered upon the work and printed reports until the appropriation, amounting to $40,000, was exhausted in payment of the work. The Legislature of 1919 passed act 257 entitled,

"An Act to Appropriate Money for the Reprinting of Certain Supreme Court Reports." No new contract for the printing of the reports was let, and the Calvert-Mc-Bride Printing Company continued to do the work under the contract made on the 2d day of November, 1917, above referred to, and the act of 1919 was treated by the board and by the printing company as an appropriation to carry on the work under the contract executed on November 2, 1917. The printing company in good faith continued the work of reprinting the Supreme Court Reports and a large part of the appropriation made by the Legislature in 1919, was expended in paying for the same. The State Treasurer did not approve the contract made in 1917, nor was he asked to do so.

The chancellor was of the opinion that the contract between the Board of Commissioners and the Calvert-McBride Company, dated November 2, 1917, was a valid and binding contract and covered the reprinting of all the Supreme Court Reports involved in this controversy which were out of print, and that act 257 passed by the Legislature of 1919, was in effect an appropriation bill to pay the Calvert-McBride Printing Company for work done under the terms of the contract dated November 2, 1917, and that therefore a new letting was unnecessary under the last mentioned act.

A decree was entered accordingly, and the case is here on appeal.

*E. G. Shofner,* for appellants.

1. The chancellor erred in holding that act 257 of 1919 was a mere appropriation bill to pay the printing company for work done under its contract awarded under the act of 1917. The board did not advertise for bids and let a contract in the constitutional way. The act of 1919 can only be made a simple appropriation bill by judicial construction, and there is no room for construction of a statute unambiguous in its language. 56 Ark. 110; 47 *Id.* 404. Statutes should be construed according to their natural and obvious language. 110 Ark.

99. If the statute is plain and unambiguous, there is no room for construction, and resort to extrinsic facts is not permitted. 11 Ark. 44; 104 *Id.* 583; 93 *Id.* 42. If it was the intention of act 257, § 2, to adopt the terms of the contract let in 1917, it is void. 111 Ark. 571. If that was not the intention, then the machinery provided in act 226 of 1917 must govern, and the action of the board in proceeding without competitive bids is void.

2. The court erred in holding, in effect, that the act of 1917 authorized the board to let the contract for an amount of printing beyond the appropriation made and that this authority was legal. If the act of the board is to be upheld, their authority must be found in act 226 of 1919, and it must be firmly grounded upon the Constitution and general laws. Article 5, § 28, Constitution; article 16, § 12, Constitution; Kirby's Digest, §§ 3403, 3415-18; 120 Ark. 80; 42 *Id.* 243. If the act did not give the board authority to contract beyond the appropriation made for the purpose, a new contract must be made under the act of 1919; and the board is without authority to give the work to any printer without advertising for bids. 40 Ark. 251; 54 *Id.* 645; 111 *Id.* 571.

3. The court erred in holding that the contract let to Calvert-McBride Company November 2, 1917, covers any amount of printing beyond the appropriation made. Having entered into a contract for printing *all* the books out of print, the board left themselves without the right to select volumes. 42 Ark. 243. The reservation was not of the right to designate *the order in which the books should be printed,* but an absolute reservation of the right to designate the volumes that should be printed at all, or in any event. In the contract there is the right to terminate the contract at any time by the board. In view of the law, constitutional and statutory, the board reserved the right to shut off work whenever the printing company had executed enough work to absorb the appropriation and therefore to let a contract for reprinting $40,000 worth of books and no more. If the contract did cover all

of the books out of print, regardless of the amount, and the board's authority to let the contract was legal, then the Legislature itself was without power to enact a law which would deprive it of the benefit of the contract. Even the Legislature could not do this. 42 Ark. 243. Unless both parties are bound, neither is. 4 Ark. 251.

4. The chancellor erred in holding that the contract of November 2, 1917, was a valid contract, and in refusing to go into an accounting under it. Art. 19, § 15, Const.; Kirby's Digest, § 6408. The contract in controversy was not approved by the Treasurer in his official capacity. The reprinting of these reports was such State printing as was covered by the Constitution and statute above quoted. 111 Ark. 571. Although our Supreme Court has not passed on the question presented, there are numerous decisions construing provisions identical with article 19, section 15, Constitution. See 56 Pac. 818; 57 *Id.* 449. These cases are peculiarly applicable here. The contract was never properly approved, and it was not effective after December 1, 1919. The Treasurer never approved it.

5. The chancellor erred in refusing to order an immediate accounting and in refusing to rescind the contract. The chancellor could and should have rescinded the contract and ordered an accounting. 40 Ark. 251.

The chancellor should have held the act of the printing board in employing the Calvert-McBride Company without advertising for bids under the act of 1919 to be illegal and restrained further payments and ordered an accounting.

*Coleman, Robinson & House,* for appellees.

Act 257 of 1919 was intended as a continuation of the appropriation of the act of March 18, 1917. There is no legal objection to the Legislature appropriating money for carrying out any contract in which the State is interested and making additional appropriations from time to time as the emergency exists. The matter is entirely in the Legislature's hands.

As to whether or not the board could have advertised for bids under the Acts of 1919 and been restrained by the contractor is entirely beside the question, as all parties have accepted the construction placed upon the act by the board and have been proceeding thereunder, and there is no merit in the contention that under the act of 1919 the Calvert-McBride Company expected to do the work for all time to come, as that is a matter entirely within legislative discretion.

Article 19, section 15, Constitution, was complied with, and the contract was properly approved. The cases in 57 Pac. 449 and 56 Pac. 818, have no application. See 127 N. W. 1079-81, 149 Iowa 76; 100 Pac. 1114-16; 23 Okla. 489; 96 Pac. 731; 37 Mont. 408.

*John D. Arbuckle,* Attorney General, and *Silas W. Rogers,* Assistant, for appellees.

1.   Sections 6408 of Kirby's Dig., is a reproduction of section 5363 of Mansfield's Digest, and the contract was approved by the Governor, Secretary of State and Auditor.

2.   There was no error in refusing to order an immediate accounting. Appellants have not been injured, as the case is still in court subject to final adjudication. The contentions of appellants are purely technical. State officers and the printing company have each acted in good faith, and the State has received a good contract and is receiving good work at a price which is a saving to the State.

HART, J. (after stating the facts). The decree of the chancery court is sought to be reversed on the ground that the contract of the date of November 2, 1917, for reprinting certain volumes of the Arkansas Supreme Court Reports is a valid and binding contract and that the act supplementary thereto, passed by the Legislature in 1919, was, in effect, an appropriation bill to pay the Calvert-McBride Printing Company for work done by it under the original contract. The correctness of the

holding of the chancellor depends upon the construction to be given article 19, section 15, of the Constitution of 1874, providing for the letting of contracts for public printing, the act of the Legislature passed for the purpose of executing this provision of the Constitution and the act of 1917, together with the act of 1919, supplementary thereto, providing for the letting of the printing of certain volumes of the Arkansas Supreme Court Reports.

Article 19, section 15, of the Constitution of 1874, reads as follows: ''All stationery, printing, paper, fuel for the use of the General Assembly and other departments of government, shall be furnished, and the printing, binding and distributing of the laws, journals, department reports and all other printing and binding, and the repairing and furnishing the halls and rooms used for the meetings of the General Assembly and its committees, shall be performed under contract to be given to the lowest responsible bidder, below such maximum price and under such regulations as shall be prescribed by law. No member or officer of any department of the government shall in any way be interested in such contracts, and all such contracts shall be subject to the approval of the Governor, Auditor and Treasurer.''

The act of November 28, 1874, makes the Governor, Auditor and Treasurer of State, ex-officio commissioners to superintend the letting of the public contracts provided for in the section of the Constitution just referred to. That act also prescribed the regulations for letting such contracts.

In 1889 the act was amended to make the Governor, Secretary of State and Auditor ex-officio commissioners to superintend the letting of all public contracts for all the purposes set forth in article 19, section 15, of the Constitution of 1874, and the act further provides that they shall discharge their duties in the manner hereinafter prescribed. Crawford & Moses' Digest, §§ 9190 *et seq.*

The record in the instant case shows that the Governor, Auditor and Secretary of State advertised for bids and let the contract under consideration to the Calvert-McBride Printing Company in November, 1917. The record also shows that no advertisement for bids was made under the statute passed in 1919, and that no new contract was let for the work done under it. The money provided for in that appropriation was paid out by the board under the contract made in November, 1917. The Governor and Auditor signed the contract and also signed the minutes of the board's meeting at which the contract was let. The Treasurer did not approve the contract, nor was he called upon to do so. He had nothing whatever to do with making or approving it. At the outset it may be said that the provision of the Constitution with regard to letting the public printing and the regulations prescribed by the statute for letting such contracts is mandatory.

In *Woodruff* v. *Berry,* 40 Ark. 251, in discussing this question, the court said: "The end proposed in the constitutional provision requiring contracts to be let to the lowest bidder is public economy. And the means provided by the Legislature is an extended notice in the public journals so as to ensure publicity and secure competition. The established policy of the State upon this subject is that public contracts are to be let upon public notice, and to be open to competition upon proposals and are to be made with the lowest bidder who can give due security. The entire authority of the board to let such contracts is conferred by statute, and the statute prescribes how only they can contract. Any other contract is unauthorized, in excess of the powers vested in the board and voidable at the election of the State."

Again in *Hodges* v. *Lawyers' Co-operative Pub. Co,.* 111 Ark. 571, the court held that the publication of the Arkansas Supreme Court Reports fell within the provisions of article 19, section 15, of the Constitution, and that that part of it requiring such contracts to be let to

the lowest bidder is mandatory. The section of the Constitution in question provides that all such contracts shall be subject to the approval of the Governor, Auditor and Treasurer. Before this is done no contract is made. These officers might consider all the bids too high and refuse to have the work done at the prices bid, or for some other legal and sufficient reason might not approve the contract. The language used is plain and unambiguous, and it is apparent that the requirement that the contract shall be approved by the designated officers is mandatory.

In *Woodruff* v. *Berry,* 40 Ark. 251, the contract was held invalid because the notice required by the statute was not given and because there was a combination among the bidders to stifle competition. The contract in that case was let by the Governor, Auditor and Treasurer, acting as a board of commissioners to superintend the letting of public contracts under the act of November 28, 1874, constituting these officers as such board. The opinion in that case is silent upon whether the officers designated by the Constitution to approve the contracts could, under the statute, be made a board for the letting of such contracts.

The silence of the court on the question in that case can not be said to be a recognition on the part of the court that the Legislature had the power to constitute the Governor, Auditor and Treasurer a board to superintend the letting of printing contracts for the State. The construction of a provision of the Constitution is a matter of too much public importance to be decided by the mere omission of the court to pass upon a question in a given action unless the decision of the case necessarily involves a construction of the provision of the Constitution in the respect named.

As we have already seen, the decision of the court in the case just referred to proceeded upon other grounds, and we do not consider that the question now presented was decided in that case.

It is contended that, inasmuch as all such contracts shall be subject to the approval of the Governor, Auditor and Treasurer, this necessarily gives the Legislature the power to provide a board to superintend the letting of printing contracts composed of all these officers. For example, it is said that, if the Legislature should name a board composed of the Governor, Auditor and Treasurer, the letting of a contract by said board would necessarily constitute an approval of such contract by these officers. A majority of the court, however, is opposed to this view. We believe that the language used by the framers of the Constitution contains an implied prohibition against giving these officers the power to let contracts for the public printing. The authority conferred is that all such contracts shall be subject to the approval of the Governor, Auditor and Treasurer. This necessarily implies that the letting of the contracts shall be performed by another officer or officers. All of us are of the opinion that the present statute, conferring the power upon the Governor, Auditor and Secretary of State to let the contracts for the public printing, is unconstitutional. A majority of the court is of that opinion, as above stated, because there is an implied prohibition against placing the Governor, Auditor or Treasurer upon a board to superintend the letting of the contracts which the Constitution requires shall be made subject to their approval. Thus successive steps are directed to be taken in the execution of such contracts, and nowhere does the Constitution provide that either of the steps required to be taken shall be conclusive. Each step is intended as a distinct and successive safeguard to protect the State against collusion and extortion. In this way the interest of the public is better safeguarded, and there is a double check against imposition and extravagance.

It is also contended that the Governor, Auditor and Treasurer act collectively or as a body in approving the contracts, and that the action of a majority is sufficient.

To sustain this contention, reliance is placed upon the common-law rule laid down in 22 R. C. L., p. 456, and 29 Cyc., p. 1434, and authorities cited to the effect that where the execution of a power of a public nature is conferred upon two or more persons it may be exercised by a majority of those intrusted with it. In most of the adjudicated cases upon the subject that have been called to our attention, it is evident, from the act to be done, that the power must be executed jointly and not separately. For example: in case of school directors, appraisers, arbitrators, commissioners to make contracts to erect public buildings, and also cases where three or more State officers are empowered to appoint another officer, the nature of the act to be performed in each case requires the joint action, or a concert of action on the part of the officers intrusted with the power.

So here, if the framers of the Constitution had given the Governor, Auditor and Treasurer the power to make or let contracts for the public printing, the nature of the act to be performed would have required them to act jointly. The framers of the Constitution, however, intended that contracts for the public printing should be let by another officer or officers, but that they should be subject to the approval of the Governor, Auditor and Treasurer. The word "approval" means that the contracts should receive the official sanction of the officers named, and that this should be given separately. Because their approval is necessary under the Constitution, we must reach the conclusion that their action is designed to be a check upon the action of the board. Each of the officers named is fitted by reason of the duties of his office to pass judgment upon the action of the board. The contract when made can be passed from one to the other for his approval in order that he may give the public the benefit of his judgment and official sanction. It is in the nature of a veto power, and each of the officers can withhold his approval and thus veto the contract.

It is claimed that the wheels of government might be blocked unless the Governor, Auditor and Treasurer are required to act jointly and not separately in giving their approval. In the first place we have nothing to do with the wisdom or expediency of the provision. In the next place, it is no more to be supposed that one of these State officers would violate his oath of office by wilfully or capriciously withholding his approval than it would be to presume that two of them might get together and approve a contract let to a favored bidder. We will indulge in neither presumption, but will indulge in the presumption that each officer will perform the duty imposed upon him by the Constitution without regard to any supposed public or private advantage to himself.

The first rule of construction is that where the language used in a Constitution is plain and unambiguous, the court can not seek other aids of interpretation. Other State Constitutions contain provisions similar to our own with regard to public printing, except that the approval of the contracts is given to the Governor and Treasurer; still others leave the approval to the Governor alone. A majority of the court is of the opinion that the framers of the Constitution intended that the approval of contracts for public printing should receive the individual judgment of each of the officers named and that they act separately in giving or withholding their approval. Such is the holding of the Supreme Court of Montana in *State* v. *Hogan,* 56 Pac. 818, and *State* v. *Smith,* 57 Pac. 445. In that State the Constitution provided for the approval by the Governor and Treasurer, and it is contended that this called for an application of the rule that public authority conferred on two can not be exercised by one without the other's consent, because the number does not admit of a majority.

The court might have placed its decision on that ground, but it did not see fit to do so. It placed its decision squarely on the ground that the framers of the Con-

stitution intended that the Governor and Treasurer should act separately in giving, or withholding his approval of the contract. The court said that the Constitution did not require them to give any reasons for their action, and that, on account of the peculiar duties of their offices, each was presumed to be especially informed as to the condition of the State's finances, and that it was thought proper to give the State the benefit of his judgment by requiring such contracts to be approved by him.

The Treasurer was not called upon to approve the contract in question, and did not do so. Therefore, it necessarily follows that the contract was not executed in accordance with the provision of the Constitution regulating the letting and approval of such contracts, and for that reason is not a valid and binding contract upon the State.

The work done under the statute of 1919 would be invalid for another reason. The original statute, which was passed in 1917, provided for the letting of the contract to the lowest and best bidder after being duly advertised. Acts of Ark., 1917, vol. 2, p. 1217. The act of 1919 simply provides for the appropriation of $30,000 to be used and expended for the reprinting of such volumes of the original Arkansas Supreme Court Reports as are, or may shortly be, out of print. No provision is contained in the act for letting the contract to the lowest bidder. General Acts of 1919, p. 186. The work in question was done under the act passed in 1919. If for no other reason, the contract under consideration would be invalid because it was not let to the lowest bidder, as required by the provision of the Constitution above quoted and referred to.

It is insisted, however, by counsel for the defendants that this is merely an appropriation bill to pay the Calvert-McBride Printing Company for work done under the terms of the contract dated November 2, 1917, and that therefore a new letting was unnecessary. We can not agree with counsel in this contention. New volumes

of the Supreme Court Reports must necessarily be printed as new opinions are prepared and handed down. If the contention of counsel be sustained, it would follow that the Legislature could make one contract for the reprinting of the Supreme Court Reports and that every subsequent Legislature might appropriate money for the continuation of this work at the same price, regardless of changed conditions. It is obvious that such contention could not be sustained. Article 5, section 28, of the Constitution of 1874 provides, in effect, that no money shall be drawn from the treasury except in pursuance of specific appropriations made by law and that no appropriations shall be made for a longer period than two years. Article 16, section 12, of the Constitution provides that no money shall be paid out of the treasury until same shall have been appropriated by law, and then only in accordance with the appropriation.

The contract entered into in 1917 could only be for the amount named in that appropriation. The Legislature of 1919 had the power to continue the work, but a new contract must have been let in accordance with the Constitution and act of the Legislature regulating the same.

It follows that the Legislature of 1919 had no power to make an appropriation for continuing the work of reprinting the Arkansas Supreme Court Reports under a contract made in 1917.

It is claimed, however, that the present contract has been for the most part executed, and that, on account of the increase in the cost of printing, a substantial sum of money was saved to the State by continuing the work under the contract made in 1917. It is true the record shows that the contract under consideration was entered into and carried out in good faith by all parties concerned, and that they believed it was a valid and binding contract. This, however, does not constitute a reason for its enforcement by the courts. In *Woodruff* v. *Berry,*

40 Ark. 251, it was held, in effect, that individuals as well as courts must take notice of the extent of authority conferred by law upon persons acting in an official capacity. The court further said that the State is not responsible for the mistakes of her officers and agents, nor bound by their unlawful acts. Hence the fact that all parties concerned acted in good faith and for the best interests of the State is no defense to the present action. The fact that the Calvert-McBride Printing Company performed valuable services for the State in good faith upon a contract believed to have been legally entered into by its properly constituted officers could at most only create a moral obligation on the part of the State to pay for the services, which, because it can not be enforced in the courts, addresses itself to the legislative department of the State government.

It follows that the decree must be reversed and the cause will be remanded for further proceedings in accordance with law and not inconsistent with this opinion.

McCULLOCH, C. J., and SMITH, J., concurring.

SMITH, J. (concurring). I concur in the holding that the Treasurer could not be left off the board while the Governor and Auditor were made members thereof. Practically speaking, officers would be expected to approve a contract which they had let. So that, if the Governor and Auditor were made members of the board to let the contract, the Treasurer should also have been made a member, otherwise the two officers who assist in letting the contract might become committed to its approval before the matter was taken up with the Treasurer, as the Constitution evidently contemplated.

But I perceive no reason why the three State officers might not be authorized to let the contract as well as to approve it if they were all three put on the board. Whatever might be said of the policy of legislation of that character, I see no constitutional objection to it.

The Constitution contains no inhibition to that effect the only provision being that ''no member or officer of

any department of the government shall in any manner be interested in such contracts, and all such contracts shall be subject to the approval of the Governor, Auditor and Treasurer.''

The approval of the contract by these officers was the thing desired, and that would be obtained if they were made members of the board which lets the contract in the first instance.   I think the case of *Woodruff* v. *Berry,* 40 Ark. 251, accords with this view.

I do not agree with the majority in the view that these State officers must separately and severally approve the contracts mentioned in this section 15.   This is a very comprehensive section, and includes many matters of detail, as it covers all contracts for stationery, printing, paper, fuel, whether for the use of the General Assembly or the other departments of government, and the printing, binding and disbursing of the laws, journals, department reports, and all other printing and binding, and the repairing and furnishing of the halls and rooms used for the meeting of the General Assembly and its committees.   The very extent and variety of the duties imposed on the three constitutional officers in regard to these contracts suggests alike the wisdom and necessity for conference and consultation, if the purpose of the Constitution is to be subserved.

Ordinarily, the purpose of conferring authority upon more than one person to perform an official duty is to secure the benefit of conference and consultation, and there is nothing in the language quoted to indicate a contrary intention here.   Certainly the necessity and advantage of such action is as apparent here as in other cases where important contracts are to be made or important action taken.

The majority has held that these officers do not act collectively.   They may meet together, or not, as they please.   Each is given the veto power.   The right of the majority to rule is destroyed.   An obdurate officer may, by withholding his own approval, coerce the majority or

embarrass the public administration. A result so full of deplorable possibilities should not be brought about unless the writers of the Constitution have so expressly ordered.

Section 9755, C. & M. Digest, was the law in this State when the Constitution of 1874 was adopted. It reads as follows: "An authority conferred upon three or more persons may be exercised by a majority of them; and a majority of three or more persons may do any act directed to be performed by them."

The Constitution did not repeal all existing laws. It repealed only those which conflicted with its own provisions. Here is a statutory rule of construction which existed when the Constitution was adopted, and it is stlil the law. Is it not fair to assume that if the framers of the Constitution had intended that this statutory rule of construction should not apply to the language under consideration, they would, in some manner, have indicated that intent? As a matter of fact, the statute quoted was merely declaratory of the common law, as will later appear in this opinion.

The reasoning of the court in the case of *School District* v. *Bennett,* 52 Ark. 511, is applicable here. The court there construed the statute under which school directors make contracts for the employment of teachers, and Judge HEMINGWAY, speaking for the court, said: "Is it necessary that a contract, to be binding on the district, should be executed at a board meeting, at which all the directors are present, or of which the one absent had notice?

"We appreciate the practical importance of this question, but entertain no doubt as to its proper solution, either on reason or authority. The different members of a board, scattered in the pursuit of their several avocations, are not the board. Duties are cast upon boards composed of a number of persons, in order that they may be discharged with the efficiency and wisdom arising from a multitude of counsel. This purpose can not be

realized without a conference between the members of the board with reference to the matters intrusted to them before they take action thereon. After conference, the board will often escape unwise measures, to which each of the members acting separately would have committed themselves either from haste, immature consideration, the demands of private engagement or an unwillingness to shorten the allotted span of life under the entreaties of an importunate agent or teacher.

"The public select each member of the board of directors, and is entitled to his services; this it can not enjoy, if two members can bind it without receiving or even suffering the counsel of the other. Two could, if they differed with the third, overrule his judgment and act without regarding it; but he might by his knowledge and reason change the bent of their minds, and the opportunity must be given him.

"We conclude that two directors may bind the district by a contract made at a meeting at which the third was present, or of which he had notice; but no contract can be made except at a meeting, and no meeting can be held unless all are present, or unless the absent member had notice."

In my opinion, the wisdom of conference and consultation on the part of these State officers is no more certain than is their duty to meet and confer under the authorities. And when they have thus met and considered their duties, the conclusion of the majority should prevail. The reason for this rule is the same now as it was when the rule was established at the common law. This reason, as stated by the Supreme Court of Nebraska in the case of *State* v. *Bemis,* 64 N. W. 338, is that the public interest shall not be prejudiced by the caprice or neglect of a single member of a public body. A substantially similar statement of the reason for the rule appears in the quotation from Coke on Littleton, which I copy later into this opinion.

In the case of *First National Bank of North Ben-
nington* v. *Town of Mount Tabor* (52 Vt. 87), 36 Am. Rep.
734, the Supreme Court of Vermont construed a statute
of that State which authorized a town to issue bonds upon
the written assignment of a majority of the taxpayers,
certified by three specified commissioners. Two of the
commissioners signed the certificates, but the third re-
fused to concur. *Held,* that the certificate was properly
certified. The opinion in the case evinces much learning
and research. The learned judge who wrote the opinion
quotes from Lord Coke (Co. Litt. 181 b) as follows:

" 'Secondly, there is a diversitie between authorities
created by the partie for private causes and authoritie
created by law for execution of justice. * * * If the sherife
upon a *capias* directed to him make a warrant to foure or
three joyntly or severally to arrest the defendant, two of
them may arrest him, because it is for the execution of
justice, which is *pro bono publico,* and therefore shall be
more favourably expounded, than when it is onely for
private; and so hath it beene adjudged. *Jura publica
ex privato promiscue decidi non debent.*' "

The opinion then proceeds to say: "Following and
applying this principle, the decisions down through the
English reports, though not numerous upon this point,
are clear that when an act is to be done by several which
is matter of public concern, all must meet and confer, and
the majority may then decide."

The American cases on the subject are very numer-
ous, and appear to have followed the English rule with
unbroken unanimity.

The case of *Bartley* v. *Meserve,* 36 L. R. A. 746, is
one in which the Supreme Court of Nebraska went ex-
haustively into the subject, as is reflected by the opinion
in that case. Norval, J., speaking for the court, said:
"The rule is well settled that where authority is com-
mitted to three or more persons to perform a public duty
or trust, if they all meet for the purpose of executing it.
a majority will decide. The authorities all so hold, and

the Attorney General has cited no case, nor after diligent search have we been able to find a single one, which conflicts therewith.''

The writer of this opinion has continued that investigation with some diligence and with equal lack of success in finding a conflicting authority.

In Sedgwick on Statutory and Constitutional Law, page 331, it is said: ''In regard to the number requisite to constitute a *quorum* of the members of a public body, or the number requisite to do business, it has long been settled that, where a statute constitutes a board of commissioners or other officers to decide any matter, as to open books, to receive subscriptions, and distribute the stock of a railroad company, but makes no provision that a majority shall constitute a quorum, all must be present to hear and consult, though a majority may then decide.''

A similar statement of the law is found in sections 105 and 106 of Throop on Public Officers. Likewise, in Lewis' Sutherland, Statutory Construction, vol. 2 (2 ed.), § 562. See, also, Cooley, Constitutional Limitations (7 ed.), page 893; Mechem on Public Officers, § 572.

In the note to section 115 of the article on Public Officers, 22 R. C. L., p. 546, a number of annotated cases are cited, which collect a very large number of cases from many courts on the subject.

One of these cases is that of *Bartley* v. *Meserve, supra.* There a statute of the State of Nebraska required that bonds under the depository law should run to the people of the State of Nebraska and be approved ''by the Governor, Secretary of State and Attorney General.'' It was pointed out that the statute did not constitute those three officers a general board for the approval of bonds of State depository banks, this being done for the purpose of distinguishing the statute from one which had been construed by the Supreme Court of that State in which certain officers had been expressly constituted a board. After recognizing the distinction between the two statutes, the court said that it did not follow that

the case was not controlled by the decision of the court concerning the manner of the discharge of duties by officers who were expressly constituted a board. There is an extensive review of the authorities, and the court said: "The principle deducible from the numerous authorities on the subject is that where three or more persons are intrusted by law with powers of a public character or nature, and, in the execution thereof, all of them are assembled, or have been duly notified of the time and place of meeting, the decision of the majority is binding, whether the statute authorizes a majority to act or is silent. Applying this rule to the facts before us, it is very evident that the approval of the Governor was not essential to the validity of the bonds of the depository banks, since he was present with the other two State officers when the bonds were approved."

If it be said that the Montana cases cited in the majority opinion support the conclusion there announced, then it may also be said that they stand alone. But, with all deference to the majority, I think those cases have been misinterpreted. In the first place, both cases involve a construction of the same contract, as appears from the second opinion. So that, in effect, they constitute one case and are, of course, by the same court. In that State there was a board to let printing contracts, subject to the approval of the Governor and Treasurer. The first case reported was a proceeding to mandamus the Secretary of State to furnish copy for the printing, it being alleged that a contract existed between the printing company, and the printing board whose business it was to let the printing contract. But in neither case was there any showing that either the Governor or Treasurer had approved the printing contract; and the first case was disposed of on the ground that there was no contract until these officers had approved the contract.

The second case, instead of being brought against the Secretary of State to compel him to furnish copy for the printing, was brought against the Governor and the

Treasurer to compel them to approve the contract, neither of whom had done so. The insistence was "that the provision of the Constitution, *supra*, requiring approval by the Governor and Treasurer, and of the statute passed in pursuance of the Constitution, imposes a mere ministerial duty upon those officers, and that their refusal to approve the contract is capricious and arbitrary and therefore subject to review by this court." The point at issue was the extent of the jurisdiction of the courts by mandamus to control action of the executive departments of the government. There was a learned discussion of that subject, which concluded with the statement that the action of a State executive may be controlled in a purely ministerial act which does not involve executive judgment and discretion, but not in one which does require such discretion.

The court then proceeded to discuss the question whether the approval of the contract was ministerial only, and, as opposing the view that it was, states the opportunities of these two officers to pass on the questions involved with advantages to the State and to the public, by virtue of the information obtained in their respective offices. The opinion does not state how they shall discharge their duties. The statement upon that subject is: "The Constitution does not define the extent to which they must go in the investigation of the action of the board, nor does it require that they must act together or state any reason for their action."

But, aside from all this, the Montana cases can not be authority on the question here discussed, for the reason that only two officers constitute the board in that State to approve public contracts, and there could be no action but by both members. If both agree at all, the agreement is unanimous. This is a mere matter of arithmetic.

It may be said in passing that the statute construed in the Montana cases made the Governor a member of the board which let the contract, and the statute was not

held unconstitutional on that account, although it was referred to as unfortunate, for the reason that "it put him (the Governor) in a position where he can refuse to approve the action of a majority of the board of which he is a party and thus put his veto upon proceedings in which he takes part. Nevertheless, his duty as a member of this board in relation to these contracts is statutory, while his duty in approving or disapproving the action of the board is constitutional; and we are of the opinion that under the provision of the Constitution it was designed that he and the Treasurer should do more than approve, in a ministerial way, the action of the board in letting the contract."

Believing that the decision of the majority on the subjects discussed in this opinion is highly unfortunate as a matter of policy, unsound in principle, and contrary to all of the authorities on the subject, I dissent from the holding that no conference on the part of these officers was contemplated and that three separate and several vetoes may be exercised and also from the holding that there are constitutional objections to making these officers members of a board to let the contracts.

McCULLOCH, C. J., concurs in the views here expressed.