FAUBUS, GOVERNOR *v.* FIELDS.

5-3618                                    388 S. W. 2d 558

Opinion delivered April 5, 1965

*Bruce Bennett,* Atty. Gen., *Beryl F. Anthony, Jr.,* Asst. Atty. Gen., for appellant.

*N. L. Schoenfeld,* for appellee.

GEORGE ROSE SMITH, J. At the general election last November the people adopted Amendment 51 to the Arkansas Constitution, creating a permanent system of voter registration. The Amendment empowers the State Board of Election Commissioners to adopt rules and regulations, consistent with the Amendment, for the administration of the registration system. The State Board is also authorized to approve detailed specifications for the Affidavits of Registration, consistent with the Amendment.

In January of this year the State Board met and approved a form for the Affidavits of Registration. In drafting this proposed Affidavit the Board added two items of information not specified by the Amendment: The voter's race and his party affiliation. The Board also provided that the Affidavit might be sworn to not only before the Permanent Registrar or his deputy, as the Amendment directs, but also before any other person authorized by law to administer oaths. The Board later adopted, upon the advice of the Attorney General, a set of rules which recite that the three changes just mentioned will not become effective until enabling legislation has been passed by the General Assembly.

This is a taxpayer's suit brought by the appellees against the State Board of Election Commissioners for a judgment declaring that the three changes made by the Board were unauthorized and void. The Board filed an answer again admitting that "enabling legislation must be provided before the additions to the Affidavits of Registration will be required by law." The chancellor entered a decree finding the first two changes to be invalid but upholding the provision that the oaths might be administered by persons other than the Registrar and his deputies.

We take judicial notice of the fact that while this appeal was pending the General Assembly completed its regular session without enacting the contemplated enabling legislation. In this court the Board has abandoned its former position and now insists for the first time that it had the power to make all three changes without an enabling act.

We are firmly of the opinion that the Board was right in its original limited view of its own powers. Section 6 of the Amendment enumerates in meticulous detail ten items of information that must appear in the Affidavits of Registration. We briefly summarize these requirements:

1. The voter's name and, in the case of a woman, her designation as Miss or Mrs.

2. The voter's exact address.

3. The State or country of the voter's birth.

4. If the voter was foreign born, the manner in which he acquired his American citizenship.

5. The date of his birth.

6. The fact, if it be true, that the voter cannot read or write.

7. The fact, if it be true, that the voter is unable to make a mark or cross on the affidavit or the ballot.

8. The voter's school district and voting precinct.

9. The name and address under which the voter was last registered in Arkansas.

10. The signature of the Permanent or Deputy Registrar.

Section 6 of the Amendment closes with this sentence, upon which the Board strongly relies: "(c) The State Board of Election Commissioners may require blank spaces for additional information, including supplements to the Record of Voting Form."

It is true that if we closed our eyes to the rest of this Amendment and confined our attention solely to the literal meaning of this single sentence, we might with some plausibility uphold what really amounts to a contention on the part of the Board that it has the power to amend this part of the Constitution. It is, however, our duty to consider the Amendment as a whole and to harmonize its various provisions if this can be done. *Smith* v. *Cole,* 187 Ark. 471, 61. S. W. 2d 55. Our endeavor, above all else, must be to ascertain the primary intent of the amendment and to give effect to that intent. *Watkins* v. *Duke,* 190 Ark. 975, 82 S. W. 2d 248. When, as here, two interpretations are permissible, we must not select one which allows the strict letter of the Amendment to defeat the dominant popular will. See *Cockrill* v. *Dobbs,* 238 Ark. 348, 381 S. W. 2d 756.

Section 6 of the Amendment was evidently drafted with much care. It enumerates the ten items of information that are to appear on the face of the Affidavits of Registration. It specifies the oath and the record of voting that are to appear on the back of the Affidavits. In this context we think it plain that subsection (c), upon which the Board relies, was intended merely to give the Board the power to implement the section as a whole, to the end that the designated items of fact might be obtained and set forth with facility and with clarity.

Whether the voter's race should be stated in the Affidavits and whether he should be compelled to disclose his party affiliation are obviously far-reaching

questions of policy that could hardly have been ignored by the draftsmen of the Amendment. Their decision to omit those matters from the Affidavits was approved by the electors who voted to adopt the Amendment. We find it impossible to believe that the people meant to confer upon an administrative board what in reality amounts to a broad power to amend the Constitution. Yet if we should sustain the Board's authority to require a statement of entirely new facts not embraced within the enumeration contained in Section 6 we are unable to perceive the point at which the Board's power would end.

If we had any misgivings about the correct interpretation of the Amendment our doubts would be set at rest by Section 19. That section provides in substance that the legislature may, by a two-thirds vote in each house, amend Sections 5 through 15 of the Amendment, so long as the amendatory legislation is consistent with the Amendment itself. It cannot reasonably be supposed that the people intended to confer both upon the State Board of Election Commissioners and upon the General Assembly the power to amend the Constitution. It cannot reasonably be supposed that the people intended to confer upon a bare majority of the State Board of Election Commissioners a power so drastic, so extreme, that even the General Assembly should be permitted to exercise it only by a two-thirds majority. That Section 19 was inserted in the Amendment proves conclusively, we think, that the Board's authority under Section 6 (c) is one of implementation rather than one of creation.

We are also of the opinion that the Board exceeded its powers in attempting to permit the oaths to be administered by someone other than the Registrar and his deputies. Section 5 provides that eligible voters may register at the office of the Registrar or at any other place designated by him. Section 6 (a, 10) directs that the Affidavit of Registration be signed by the Registrar or his deputy who receives the application. Section 9 (c) empowers the Registrar and his deputies to administer the oaths to the Affidavits of Registration. Section 9 (e)

provides that if the voter is unable to register in person at the Registrar's office by reason of sickness or disability the Registrar or his deputy may register the applicant at his home. We need not determine whether the legislature could, consistently with the Amendment, permit what might be regarded as absentee registration by allowing the oath to be taken before anyone authorized by law to administer an oath. In this case it is enough to say that the State Board is without authority to make this revision in the registration system.

A judgment will be entered in this court declaring all three of the changes in question to be ineffective and void.

ROBINSON and JOHNSON, JJ., dissent.

JIM JOHNSON, Associate Justice (dissenting). From the inception of constitutional forms of government the courts have recognized that the rules of constitutional construction by necessity should be kept as simple as possible. The reason for this is obvious. A constitution is the paramount and fundamental law by which all citizens must be governed. The less complicated the interpretation the more readily the charter can be understood by those who are bound by its provisions.

The cardinal rules of constitutional construction have been stated and restated by this and other courts many times. The most basic of those rules are as follows:

1. "Where the language used in a constitutional provision is plain and unambiguous, the courts cannot seek other aids of interpretation." *Ellison* v. *Oliver,* 147 Ark. 252, 227 S. W. 586.

2. "It is the duty of the court to construe the Constitution as written." *Cannon* v. *May,* 183 Ark. 107, 35 S. W. 2d 70.

3. "Courts must carry out constitutional provisions as indicated by language thereof, regardless of wisdom

or expediency." *Hargraves* v. *Solomon,* 178 Ark. 11, 9 S. W. 2d 797.

Applying these simple rules to the provisions of Amendment 51 to the Constitution of Arkansas, I agree with the majority that the State Board of Election Commissioners exceeded their authority in attempting to permit the registration oaths to be administered by someone other than the Registrar or his deputy. Section 5, Section 6(a) (10), Section 9(c) and Section 9(e) all make it crystal clear that only the Registrar or his deputies are to administer this required oath.

If the majority had applied the same rules to the construction of the remainder of the plain and unambiguous language of the amendment as it applied in its construction on this point there would be no need for this dissent.

Regardless of whether it was wise or expedient the framers of this amendment vested broad powers in the hands of the State Board of Election Commissioners. Some of these powers are enumerated in Section 5(c) as follows:

"The State Board of Election Commissioners is authorized and, as soon as is possible after the effective date of this Amendment, directed to prescribe, adopt, publish and distribute:

(1) Such Rules and Regulations supplementary to this Amendment and consistent with this Amendment and other laws of Arkansas as are necessary to secure uniform and efficient procedures in the administration of this Amendment throughout the State;

(2) A Manual of Instruction for the information, guidance and direction of election officials within the State; and

(3) *Detailed specifications* of the Registration Record Files, *the Affidavits of Registration and other registration forms,* all of which shall be consistent with this Amendment and uniform throughout the State." [Emphasis ours.]

It doesn't take a great deal of imagination to conclude that the State Board of Election Commissioners had, by this amendment, imposed upon them a herculean task requiring the faithful exercise of a large amount of discretion. The framers of this amendment apparently were not satisfied with *one* direction to the State Board of Election Commissioners (in Section 5, *supra*) to prescribe, adopt, publish and distribute detailed specifications of the Affidavits of Registration and other registration forms. They chose to reiterate and emphasize this directive in Section 6(c). There they used these words:

"The State Board of Election Commissioners may require blank spaces for additional information . . ." These are plain and unambiguous words and there is no reason to use other aids of interpretation. In fact we are, under the rules of construction, forbidden to do so. Now the Board not only had the right but the duty to treat these plain and unambiguous words as if they meant what they said. The record shows they did just that. On December 28, 1964, the Board met and to the best of their ability attempted to faithfully discharge their duties under the amendment. They met again on January 5, 1965, to confirm their action, as constitutionally charged by the overwhelming vote of the people. In these meetings they required "blank spaces for additional information." They determined that the listing of race would aid in the proper identification of the voter just as the required designation of the sex of the voter and comparison of signature would tend to verify that the person voting was identical to the person who registered. In addition they determined that the listing of party would be of aid in the proper conduct of an election under a two-party system. These actions were taken and widely publicized prior to the convening of the General Assembly on January 11, 1965, and we take judicial notice of the fact that the "General Assembly completed its regular session without enacting" (or, according to the official journal, attempting to enact) any legislation tending to limit the authority of this Board.

The majority, in my view, summarily concluded that these two authorized requirements "defeat the dominant and popular will." Neither the majority nor appelless attempt to point out just how the dominant and popular will differs from that so unmistakably and clearly expressed in the amendment. Certainly it cannot be said that these requirements are inconsistent with or repugnant to the spirit or the letter of Amendment 51. Nor can it be said that these requirements are not germane to proper registration when it is found that the law of a majority of the states provides for either one or both of these identical requirements.

If the self styled proponents of this amendment (who declined, neglected or refused to even cross appeal from the adverse ruling of the trial court on the oath administration feature of this case) had not wanted these plain and unambiguous words in the constitution, they should have prevailed upon the framers of the amendment to omit them prior to a vote of the people rather than wait until this late date to urge this court to remove the words for them.

A majority of the State Board of Election Commissioners did not amend the constitution. The same cannot be said for the majority opinion of this court.

For the reasons stated I respectfully dissent.