MUNCRIEF v. HALL, SECRETARY OF STATE.

5-314                                                    262 S. W. 2d 92

Opinion delivered November 9, 1953.

Rehearing denied December 7, 1953.

*James W. Chesnutt, Martin K. Fulk* and *William H. Donham,* for appellant.

*Tom Gentry,* Attorney General and *John R. Thompson,* Chief Assistant Attorney General, for appellee.

ED. F. McFADDIN, Justice. This is a test suit to determine the constitutionality of Sec. 17 of Art. 7 of Act 41 of 1953, which section,[1] in its entirety, reads:

"SECTION 17. *Contracts Awarded Under Article 19 of the Constitution.* All contracts negotiated under the provisions of Section 15 of Article 19 of the Constitution, shall be awarded by the Director, subject to the approval of the Governor, State Auditor and State Treasurer and to the other provisions of Section 15 of this article, and subject to delivery to the point of use as provided for by Paragraph (J) of Section 13 of this article.

"All powers and duties now conferred by law upon the Secretary of State as the designated official to superintend the letting of all public contracts for the purposes

---

[1] Only this one Section is involved in this litigation. This is mentioned so that no one will think that the holding in *McCarroll* v. *Farrar,* 199 Ark. 320, 134 S. W. 2d 561, would make the present decision *res judicata* in litigation involving other portions of the Fiscal Code.

set forth in Section 15 of Article 19 of the Constitution are hereby repealed; and such powers are hereby conferred upon the Director of Finance under the provisions of this Act."

Prior to the enactment of said Act 41 of 1953 (known as the "Fiscal Code" and so hereinafter designated), the law governing the negotiation of contracts, with reference to § 15 of Art. 19 of the Constitution, was contained in Act No. 171 of 1921, which, as now found in § 14-301, Ark. Stats., reads:

"Contracts let by Secretary of State—Approval of contracts.—The Secretary of State is hereby designated to superintend the letting of all public contracts, for all purposes set forth in section 15 of article 19 of the Constitution of Arkansas, and he shall discharge his duties, proceed in accordance with and be governed by the provisions of chapter 162 of Crawford & Moses' Digest of the Statutes of Arkansas relating to the letting of public contracts; provided, that all contracts entered into by said Secretary of State, before they become binding upon the State, shall receive the approval of the Governor, Auditor and Treasurer in their respective official capacities."

After the enactment of the Fiscal Code in 1953, the Secretary of State, upon inquiry, was officially advised by the Attorney General of Arkansas that Sec. 17 of Art. 7 of the Fiscal Code was unconstitutional:[2] therefore the Secretary of State proceeded to advertise for bids to be received under § 14-301 Ark. Stats. Thereupon, the appellant, Muncrief, as a taxpayer, filed this suit in the Pulaski Chancery Court, to enjoin the Secretary of State, C. G. Hall. Frank A. Storey, as a taxpayer, and as the Director of the Department of Finance and Administration under said Fiscal Code, intervened and adopted the allegations of Muncrief's complaint to the effect that § 14-301 Ark. Stats. was repealed by Sec. 17 of Art. 7 of the Fiscal Code, and that said section of the Fiscal Code was in all things constitutional. Hall, as Secretary of

[2] Such opinion of the Attorney General was because of the decision of this Court in *Ellison* v. *Oliver,* 147 Ark. 252, 227 S. W. 586.

State, resisted the complaint, claiming that said Sec. 17 of the Fiscal Code was unconstitutional, and therefore § 14-301 Ark. Stats. continued to be the law. The Chancery Court entered a decree in accordance with Hall's contentions; and the case is here on appeal.

We affirm the decree of the Chancery Court. Our duty as Judges is to uphold the Constitution and the cases interpreting it.

I. *A Study of Ellison* v. *Oliver*. As we of the majority see it, the holding of this Court in *Ellison* v. *Oliver*, 147 Ark. 252, 227 S. W. 586, has settled the question here presented. In that case, the Arkansas Legislature of 1889[3] had designated the Governor, Secretary of State and Auditor, as the ex-officio Commissioners to superintend the letting of all public contracts for the purposes set forth in Sec. 15, Art. 19 of the Constitution. The said constitutional provision reads:

". . . all such contracts shall be subject to the approval of the Governor, Auditor and Treasurer."

Thus the Act of 1889 constituted the three officials (Governor, Secretary of State, and Auditor) as a *board* to *let the contracts*, and left it to the Treasurer to later signify his acquiescence or rejection in a manner not disclosed.

This Court held that the Act of 1889 was violative of the constitutional provisions just quoted because (1) the Constitution in Sec. 15, Art. 19 necessarily meant that contracts must be *let* by some officer other than the Governor, Auditor and Treasurer, since those officials were to approve the contracts, rather than to negotiate them; and (2) that the said three officers named in the Constitution (Governor, Auditor and Treasurer) were not by

---

[3] This was Act No. 107 of 1889, which provided, *inter alia*: "The Governor, Secretary of State, and Auditor shall be ex-officio commissioners to superintend the letting of all public contracts for all the purposes set forth in Section 15 of Article 19 of the Constitution of Arkansas, and shall discharge the duties in the manner hereinafter prescribed. . . . The Board of Contracts shall have power to let the contract biennially for stationery and furnishing the halls of the Legislature at the same time the other contracts are let, and to make specifications of the articles and services required."

the Constitution made members of a Commission, but acted as individuals in approving or rejecting the contracts *negotiated by some other official*. Here are some pertinent quotations from the majority opinion in the case of *Ellison* v. *Oliver*:

(1) "We believe that the language used by the framers of the Constitution contains an implied prohibition against giving these officers the power to let contracts for the public printing. The authority conferred is that all such contracts shall be subject to the approval of the Governor, Auditor, and Treasurer. This *necessarily implies that the letting of the contract shall be performed by another officer or officers*." (Italics our own.)

(2) "The framers of the Constitution, however, intended that contracts for the public printing should be let by another officer or officers, but that they should be subject to the approval of the Governor, Auditor, and Treasurer. The word 'approval' means that the contracts should receive the official sanction of the officers named, and that this should be given separately."

In the concurring opinion written by Mr. Justice Frank G. Smith, it was recognized that the officer who had to approve the contract should not be interested in the letting of the contract, and there is this language:

"Practically speaking, officers would be expected to approve a contract which they had let . . . . the two officers who assist in letting the contract might become committed to its approval before the matter was taken up with the Treasurer, as the Constitution evidently contemplated."

The case of *Ellison* v. *Oliver* was decided in January, 1921, and has been repeatedly cited by this Court and never questioned.[4] Even in the present litigation, there is no insistance that *Ellison* v. *Oliver* should be over-

---

[4] It is interesting to note that Mr. Justice FRANK G. SMITH, who wrote the concurring opinion in *Ellison* v. *Oliver*, later cited the majority opinion on another point, in the case of *Morley* v. *Remmel*, 215 Ark. 434, 221 S. W. 2d 51.

ruled. After the decision of this Court in *Ellison* v. *Oliver,* the Legislature passed Act No. 171 of 1921, which is now § 14-301 Ark. Stats. and is the law under which the Secretary of State is acting in the case at bar. *Ellison* v. *Oliver* clearly holds that the Governor cannot participate in the negotiation or letting of the contracts. His constitutional duty is to approve or reject the contracts after they are negotiated: he is not to negotiate.

II. *A Study of the Position of the Director of Finance and Administration.* With the point established that under *Ellison* v. *Oliver,* the Governor cannot negotiate the contracts, we turn to an examination of the position[5] of Director of Finance and Administration. That position was unknown until the Legislature adopted the Fiscal Code of 1953. The said Code has these provisions, which we italicize:

(1) In Art. 1, Sec. 2 (C), it is declared the policy of the State: "To create and establish the Department of Finance and Administration *as an agency directly responsible to the Governor* as Chief Executive of the State, and to define the duties of the Director of Finance and Administration; . . . ."

(2) In Art. 2, Sec. 1, the Director of Finance and Administration acts " . . . . *in behalf of the Governor.*"

(3) In Art. 3, Sec. 1 (B), it is said: *"The Director shall be employed by, and serve at the pleasure of, the Governor."*

In Art. 3, Sec. 2, it is provided that the Director take an oath: but we find nothing in the Act that requires his appointment to be confirmed by the Senate. He was not so confirmed. Thus we conclude that by the Fiscal Code, the Director of Finance and Administration acts at the direction of the Governor and serves during the will and pleasure of the Governor.

III. *"What One Cannot Do Himself, He Cannot Do Through Another."* Ever since the early days of

---

[5] We call it "position" to avoid saying whether the holder is an officer or an employee.

our Anglo American legal system, and continuously to the present, there has been the maxim: ''What I cannot do myself, I cannot do through another.''[6] This maxim leads us to these inescapable conclusions in this litigation: (1) that no amount of judicial legerdemain can escape the fact that the Director of Finance and Administration acts at the direction of the Governor; and (2) since, under *Ellison* v. *Oliver,* the Governor could not serve in the negotiating or letting of the contracts, certainly the Director of Finance and Administration cannot serve in the negotiating and letting of the contracts.

Under the holding of this Court in *Ellison* v. *Oliver, supra,* we conclude that Sec. 17 of Art. 7 of the Fiscal Code is violative of the Constitution, and that § 14-301 Ark. Stats. is still the governing law.

Affirmed.

Justice GEORGE ROSE SMITH concurs.

GRIFFIN SMITH, Chief Justice (dissenting). The opinion shunts the very principle it undertakes to emphasize—that the state government is conducted by three coordinate branches, each independent of the other. The general assembly (not the Governor) designated the duties that are to be discharged by the director of finance and administration, one duty being the letting of printing contracts. To say that the director is the agent of the governor in the ministerial matters incidental to these lettings is to assume, without evidence, and to condemn, without cause. The implication is that gentlemen appointed by the executive thereafter become his puppets and perform according to a formula fashioned for each emergency as it arises.

I am not yet willing to believe that honest men are not to be found in the public service, nor do I believe that the executive is concerned with shady affairs the constitution was intended to circumvent.

---

[6] Those who love Latin say it: *"Quod per me non possum, nec per alium."* The case of *Murrell* v. *Smith,* 4 Coke 24 b 76 Reprint 928, was decided by the Court of Kings Bench in 1591; and this maxim was there used. It was also used in the case of the Monopolies, 11 Coke 84 a 77 Reprint 126, also decided in the Reign of Elizabeth I.

Who lets the printing contracts, and how they are advertised and the bids received, are detail delegated to the general assembly—not to the courts. Words of piety and suggestions of possible conflict between authority are not sufficient to alter the proposition that the constitution gave to the lawmaking body the right to formulate a method for making contracts under the provisions of § 17 of Article 7 of Act No. 41 of 1953.

In my opinion the controversy does not raise a reasonable doubt, and certainly the situation is not one to warrant results that in effect stigmatize honorable officers of a coordinate branch of the government. I would reverse the decree and leave the authority where the general assembly had a right to place it.

J. SEABORN HOLT, J. (dissenting). I do not agree with the majority that § 17, Art. 7 of Act 41 of the Acts of 1953 is unconstitutional and unenforceable.

In determining the constitutionality of a legislative enactment, we have certain well established and fundamental rules to guide us which have been adhered to throughout the history of this Court. Unless expressly, or by implication, the Legislature is prevented from doing so under our Constitution, it has the power to enact the written laws of the State and to declare its policy. We have nothing to do with legislative policy. All legislative acts are presumed to be constitutional and we must so hold unless clearly incompatible, and at variance, with the Constitution. All doubts on the question of the constitutionality must be resolved in favor of the constitutionality of the act. The rule is elementary that every reasonable construction must be resorted to in order to preserve the constitutionality of the act. *Bush* v. *Martineau,* 174 Ark. 214, 295 S. W. 9.

It will be noted that Art. 19, § 15 of our Constitution makes no provision for any specific official to let the contracts for public printing and other services covered thereby, but specifically provides that they shall be performed under contract with the lowest responsible bidder "under such regulations as shall be

prescribed by law," and that all such contracts shall be subject to the approval of the Governor, Auditor and Treasurer of the State.

By Art. 7, § 17 of Act 41, *supra,* the General Assembly has created the position of Director of Finance and Administration and assigned to him all powers and duties for the superintending, letting and awarding of all public printing contracts, subject always to the approval of the Governor, Auditor and Treasurer of the State. The Act leaves no latitude for discretion or arbitrary action on the part of the Director in the actual letting of the contracts. All steps in the letting are thoroughly covered and controlled by Act 41, and, as I view it, actually amounts to no more than a formal ministerial act on the part of the Director in performing this self executing function in the name of the State. In such circumstances, we must indulge in the presumption that this Director, acting for the State of Arkansas, will perform the duties imposed upon him without fear or favor.

The majority say that the holding of this court in *Ellison* v. *Oliver,* 147 Ark. 252, 227 S. W. 586, has settled the question here against appellants' contention that the Act in question is constitutional. I did not so construe that holding. As I construe that opinion, it was the Court's intention there to answer the argument in support of the constitutionality of the 1889 Act. That 1889 Act amended a previous act so as to make the Governor, Secretary of State and Auditor, commissioners to superintend the letting of all public contracts for the purposes set forth in Art. 19, § 15 of the Constitution, but made no provision for the approval of the letting of such contracts by the Governor, Auditor and Treasurer of the State, as provided by Art. 19, § 15 of the Constitution. The act did not provide that the public printing contracts also be approved by the State Treasurer, and in the *Ellison* v. *Oliver* case, the Treasurer was not consulted and did not approve the printing contracts in question. The question that then arose was whether it was the intention of the constitutional provision, *supra,* to require

the approval of the Governor, Auditor and Treasurer collectively, or whether it was the intention to obtain the approval of each separately. I do not think that it was the intention of this Court in the above case to hold or to imply that some other officer or officers other than the Governor, Auditor or Treasurer should let the contracts. This seems apparent from the following language used: "So here, if the framers of the Constitution had given the Governor, Auditor and Treasurer the power to make or let contracts for the public printing, the nature of the act to be performed would have required them to act jointly. The framers of the Constitution, however, intended that contracts for the public printing should be let by another officer or officers, but that they should be subject to the approval of the Governor, Auditor and Treasurer. The word 'approval' means that the contracts should receive the official sanction of the officers named, and that this should be given separately. Because their approval is necessary under the Constitution, we must reach the conclusion that their action is designed to be a check upon the action of the board. Each of the officers named is fitted by reason of the duties of his office to pass judgment upon the action of the board. The contract when made can be passed from one to the other for his approval in order that he may give the public the benefit of his judgment and official sanction. It is in the nature of a veto power, and each of the officers can withhold his approval and thus veto the contract."

The majority appear to rest heavily on a paragraph taken from the concurring (not the majority) opinion of Justice Frank G. Smith in the above case and point out that "it was recognized that the officer who had to approve the contract should not be interested in the letting of the contract." Certain language from that concurring opinion (omitting parts) is set forth. A full quote of what Judge Smith said is as follows:

"I concur in the holding that the Treasurer could not be left off the board while the Governor and Auditor were made members thereof. Practically speaking, of-

ficers would be expected to approve a contract which they had let. So that, if the Governor and Auditor were made members of the board to let the contract, the Treasurer should also have been made a member, otherwise the two officers who assist in letting the contract might become committed to its approval before the matter was taken up with the Treasurer, as the Constitution evidently contemplated.

"But I perceive no reason why the three State officers might not be authorized to let the contract as well as to approve it if they were all three put on the board. Whatever might be said of the policy of legislation of that character, I see no constitutional objection to it.

"The Constitution contains no inhibition to that effect, the only provision being that 'no member or officer of any department of the government shall in any manner be interested in such contracts, and all such contracts shall be subject to the approval of the Governor, Auditor and Treasurer.'

"The approval of the contract by these officers was the thing desired, and that would be obtained if they were made members of the board which lets the contract in the first instance."

This language speaks for itself, and I fail to see how any comfort can be derived by the majority from it.

Under Act 41 of 1953, as has been pointed out, the separate approval of the constitutional officers named, —Governor, Auditor and Treasurer, — of the contracts prepared and let by the Director must be had. A majority was not sufficient. The approval of all these constitutional officers was required.

I cannot agree that because the Legislature provided that the Governor appoint a Director to perform duties in effect ministerial, it would require us to strike down the legislation as unconstitutional on the theory that such appointee might be influenced or controlled by the Governor.

It is interesting to note that the majority opinion points out that Art. 3, § 2 of the 1953 Act provides "that

the Director take an oath: But we find nothing in the Act that requires his appointment to be confirmed by the Senate. He was not so confirmed.'' The clear implication being that had the Senate confirmed the Governor's appointee (for Director) then we would uphold the constitutionality of the section challenged. Just how this alleged additional safeguard would have prevented any influence being exerted by the Governor over the Director (had the Governor been so inclined) is not made clear.