SIDNEY A. KEGELES ET AL *v.* ERNIE J. AMBORT

5-4553                                                423 S. W. 2d 875

Opinion delivered January 31, 1968

*Lester & Shults,* for appellants.

*H. B. Stubblefield, William J. Smith, Ted G. Boswell* and *Edward L. Wright,* for appellee.

PAUL WARD, Justice. This appeal calls for a decision on the constitutionality of Act 441 of 1967 which created a State Printing Specifications Review Committee (hereafter referred to as Committee), which has the duty to review and classify state printing contracts, etc. The Committee, consisting of three members, is composed as follows:

1. The Purchasing Agent of one of the state supported institutions of higher learning.

2. The Purchasing Director of the State Health Department.

3. The State Purchasing Director.

On September 8, 1967, Ernie J. Ambort (a taxpayer and appellee herein) filed a Complaint in Chancery

against the Committee and others, alleging that the Secretary of State, pursuant to regulations promulgated by the Committee, is about to take bids on printing contracts in compliance with Act 441; that said Act is unconstitutional, and; that, if the contracts are awarded, plaintiff and other citizens and taxpayers will be irrevocably damaged. The prayer was that said Act be declared unconstitutional and void, and that the Secretary of State and the Commission be enjoined from proceeding further.

The Secretary of State answered that he neither admits nor denies the allegations in the complaint. The Committee, by answer, stated said Act 441 was a valid statute, and asked that the complaint be dismissed. The Attorney General, being permitted to intervene, also asked to have the complaint dismissed.

The matter being presented on a stipulation of facts, the trial court held Act 441 was unconstitutional and void, and enjoined further proceeding under same.

For reversal appellants rely upon one point, stated as follows:

"Act 441 is a valid enactment of our legislature which does not in any way violate Article 19, § 15 of the Arkansas Constitution."

To clarify the pivotal issue here involved we first quote the portion of the Constitution referred to and abstract briefly Act 441.

Article 19, § 15 reads:

"15. Contracts for Stationery, printing and other supplies—Personal interest in contracts prohibited. —All stationery, printing, binding and distributing of the General Assembly and other departments of government, shall be furnished and the printing, binding and distributing of the laws, journals, de-

partment reports and all other printing and binding, and the repairing and furnishing the halls and rooms used for meetings of the General Assembly and its committees, shall be performed under contract to be given to the lowest responsible bidder, below such maximum price and under *such regulations as shall be prescribed by law*. No member or officer of any department of the government shall in any way be interested in such contracts, and all such contracts shall be subject to the approval of the Governor, Auditor and Treasurer." (Emphasis ours.)

Act 441 of 1967, in substance and in parts deemed pertinent here, provides.

§ 1. The Secretary of State, with the advice of the Committee, shall prepare specifications of all state printing contracts, etc.

§ 2. Creates the Committee.

§ 3. Relates to when the Committee meets and payment of expenses.

§ 4. The Committee has the following powers: (a) study and review existing contracts contemplated by said Section 15 of Article 19; (b) To evaluate the requirements of various departments relative to costs and services; (c) To assist in developing necessary specifications, rules and regulations.

§ 5. (1) Similar to (c) above—and approve such specifications. (2) Classify and specify the duration of contracts—whether one or two years. (3) Study requirements of state agencies.

§ 6. Secretary of State to supervise the opening and tabulation of bids contemplated under Art. 19, § 15, and specify the time and manner of advertising for bids.

§ 7. Relates to manner of opening bids.

§ 8. Similar to § 7, and requests contracts to be let to lowest responsible bidder.

§ 9. The Secretary of State, with the Auditor and Treasurer, shall determine sufficiency of bond given by bidder, etc.

§ 10. Secretary of State may investigate sufficiency of bidder to carry out contract.

§ 11. The Secretary of State, with approval of the Committee, has discretion to determine when a contractor is in default, etc.

§ 12. All contracts awarded shall be approved by the Governor, Auditor and Treasurer.

§ 13. Repeals all laws in conflict.

§ 14. If any provision is invalid it shall not affect other provisions.

§ 15. Emergency Clause. Since it is found: that state agencies spend thousands of dollars each year for printing and stationery; that most laws governing such contracts are obsolete, and; there is a need to establish a procedure *to review the contracts now being let and in order that new specifications and procedures may be established to promote efficiency and economy in the letting of such contracts,* an emergency is declared. (Our Emph.)

A careful examination of that portion of the Constitution copied above and the provisions of Act 441, leads us to the conclusion that there is nothing in Act 441 which conflicts with the Constitution. We feel it is unnecessary to further belabor this conclusion, because appellee has failed—after being challenged by appellants—to point out any specific conflict or any reasons

for an affirmance of the trial court except those hereafter examined.

*One.* It is contended by appellee that the case of *Ellison* v. *Oliver*, 147 Ark. 252, 227 S. W. 586, is in point and calls for an affirmance here. We do not agree.

In the *Ellison* case we construed Act 107 of 1889 which selected the Governor, Secretary of State, and Auditor as a Board to award the printing contracts, and held said Act 107 invalid because Art. 19, § 15 necessarily meant someone *other than the Governor* must let or award the contracts. This was based on the fact that the Constitution required the governor to *approve* the contracts, not to *let* them. That conflict of interest does not arise under Act 441.

Also, appellee likewise relies on *Muncrief* v. *Hall*, 225 Ark. 570, 262 S. W. 2d 92, but that case is distinguished from the case here under consideration on the same principle announced in the *Ellison* case. This is fully explained at page 575 of the Arkansas Reports.

*Two.* Attention has been called to certain language used in § 4 (a) of Act 441 which shows the Act is unconstitutional. It states that the Committee shall have the power and duty "To study and review all existing contracts . . ." There is no merit in this contention. A casual reading of the Act, and especially the emergency clause, indicates clearly there was no intent of the legislature to change any existing contract but only to procure information helpful in negotiating contracts in the future. Also it is pointed out that if such language violates the Constitution it can be eliminated under § 14 of the Act, and would not render the rest of the Act inoperable.

It is therefore our opinion that Act 441 of 1967 is valid and not unconstitutional, and that the decree of the trial court must be, and is hereby, reversed.

BYRD, J., dissents.

CONLEY BYRD, Justice, dissenting. My disagreement goes to the majority opinion's construction of Act 441 of 1967 and their undue emphasis on the use of the words "let" or "letting of contracts" as the same are used in *Ellison* v. *Oliver,* 147 Ark. 252, 227 S. W. 586 (1921). To understand the constitutional issue presented it is necessary to understand not only the provisions of Act 441 but also article 19, § 15 of the Arkansas Constitution as it has been interpreted by our decisions in *Ellison* v. *Oliver, supra,* and *Muncrief* v. *Hall, Secretary of State,* 222 Ark. 570, 262 S. W. 2d 92 (1953).

Act 441, § 1 provides:

"The Secretary of State with the advice and approval of the State Printing Specifications Review Committee shall prepare specifications for all State Printing Contracts to insure finished products of the quality required for the best use of the various departments . . ." Section 2 provides that the "State Printing Specifications Review Committee" shall consist of three members as follows:

(1)   One member shall be the Purchasing Agent of one of the State supported institutions of higher learning, to be named by the Commission on Coordination of Higher Educational Finance.

(2)   The Purchasing Director of the State Health Department.

(3)   The State Purchasing Director.

Section 2 further provides:

"The Committee shall choose one of its members as Chairman, provided that the Secretary of State, charged with the letting of State Printing Contracts, shall be the ex officio Secretary of the Committee and shall keep all records of its proceedings."

Section 4 authorizes the "Committee" to regroup, reclassify, or divide existing contracts into new contracts

and to develop the necessary specifications. Section 5 authorizes the "Committee" to determine which contracts shall be let biannually and which shall be let annually. In addition section 5 provides:

"The number of printing items to be included in each contract or the nature or amount of printing services, stationery, or other items, to be included in each such contract to be let by the Purchasing Official under the provisions of this Act shall be as determined and certified by the State Printing Specification Review Committee."

According to my understanding of the provisions of Act 441, the State Purchasing Director is an appointee of the Governor[1]—i. e., he is appointed by the Director of Administration by and with the consent of the Governor and serves at the pleasure of the Governor. He, together with the other two members of the "State Printing Specifications Review Committee," does whatever negotiating is done in connection with State Printing Contracts—i. e., they determine the specifications for each item, the number of items to be grouped into each contract and whether the contract is for one year or two years.

Article 19, § 15 of our Constitution provides:

"*Contracts for stationery, printing and other supplies—Personal interest in contracts prohibited.*—All stationery, printing, paper, fuel, for the use of the General Assembly and other departments of government, shall be furnished and the printing, binding and distributing of the laws, journals, department reports and all other printing and binding, and the repairing and furnishing the halls and rooms used for the meetings of the General Assembly and its committees, shall be performed under contract to be given to the lowest responsible bidder, below such maximum price and under such

---

[1] Under Act 468 of 1967 the Director of the Purchasing Division of the State Administration Department has assumed the duties of "The State Purchasing Director."

regulations as shall be prescribed by law. No member or officer of any department of the government shall in any way be interested in such contracts, and all such contracts shall be subject to the approval of the Governor, Auditor and Treasurer.''

While construing Article 19, § 15 in *Ellison* v. *Oliver, supra,* as applied to an act which made the Governor, Auditor and Secretary of State ex officio commissioners to superintend the letting of all public contracts, we said:

''We believe that the language used by the framers of the Constitution contains an implied prohibition against giving these officers the power to let contracts for the public printing. The authority conferred is that all such contracts shall be subject to the approval of the Governor, Auditor and Treasurer. This necessarily implies that the letting of the contracts shall be performed by another officer or officers. All of us are of the opinion that the present statute, conferring the power upon the Governor, Auditor and Secretary of State to let the contracts for the public printing, is unconstitutional. A majority of the court is of that opinion, as above stated, because there is an implied prohibition against placing the Governor, Auditor or Treasurer upon a board to superintend the letting of the contracts which the Constitution requires shall be made subject to their approval. Thus successive steps are directed to be taken in the execution of such contracts, and nowhere does the Constitution provide that either of the steps required to be taken shall be conclusive. Each step is intended as a distinct and successive safeguard to protect the State against collusion and extortion. In this way the interest of the public is better safeguarded, and there is a double check against imposition and extravagance.''

\* \* \*

''The framers of the Constitution, however, intended that contracts for the public printing should be let by

another officer or officers, but that they should be subject to the approval of the Governor, Auditor and Treasurer. The word 'approval' means that the contracts should receive the official sanction of the officers named, and that this should be given separately. Because their approval is necessary under the Constitution, we must reach the conclusion that their action is designed to be a check upon the action of the board. Each of the officers named is fitted by reason of the duties of his office to pass judgment upon the action of the board. The contract when made can be passed from one to the other for his approval in order that he may give the public the benefit of his judgment and official sanction. It is in the nature of a veto power, and each of the officers can withhold his approval and thus veto the contract.''

Again in *Muncrief* v. *Hall, Secretary of State, supra,* we had involved Act 41 of 1953, which provided:

''All contracts negotiated under the provisions of Section 15 of Article 19 of the Constitution, shall be awarded by the Director, subject to the approval of the Governor, State Auditor and State Treasurer . . . .''

The Director therein referred to was the Director of the Department of Finance and Administration, who served at the pleasure of the Governor. In holding that section of the act unconsitutional we said at page 575: ''*Ellison* v. *Oliver* clearly holds that the Governor cannot participate in the negotiation or letting of the contracts. His constitutional duty is to approve or reject the contracts after they are negotiated: he is not to negotiate.''

''III. *'What One Cannot Do Himself, He Cannot Do Through Another.'* Ever since the early days of our Anglo American legal system, and continuously to the present, there has been the maxim: 'What I cannot do myself, I cannot do through another.' This maxim leads us to these inescapable conclusions in this litigation: (1) that no amount of judicial legerdemain can escape

the fact that the Director of Finance and Administration acts at the direction of the Governor; and (2) since, under *Ellison* v. *Oliver,* the Governor could not serve in the negotiating or letting of the contracts, certainly the Director of Finance and Administration cannot serve in the negotiating and letting of the contracts."

Does Act 441 permit the State Printing Specifications Review Committee to negotiate or let contracts contrary to our decisions in *Ellison* and *Muncrief*? I say that it does. Since the "Committee" is authorized to control item specifications and the number of items to be grouped into each contract, the "Committee," by grouping a patented item (such as a patented photographic paper sold through a franchised dealer) together with other general printing supplies, can effectively select the lowest responsible bidder, because other suppliers, not being able to supply the patented or franchised item, would be unable to comply with the contract specifications. It has been suggested that this is a matter addressed to the wisdom of the legislature rather than to its constitutional validity, but I only point out that it is authorized and permitted by Act 441 and that the "Committee" is thereby authorized by said act to negotiate or let a contract within the very strict construction placed by the majority upon the *Ellison* and *Muncrief* cases.

It is true that the conduct pointed out in the above paragraph can be checked through the approval separately required by the Governor, Auditor and Treasurer, as provided in Article 19, § 15 of the Constitution. However, this also existed in the *Ellison* and *Muncrief* cases and we there held that the Constitution contemplated distinct and successive steps in the negotiation and letting of printing contracts as a "safeguard to protect the State against collusion and extortion."

The distinct and successive step argument is as valid today as it was in 1921 or 1953. Therefore I would affirm the decree of the trial court holding Act 441 unconstitutional.