Robert E. GRAY Sr. *v.* W. D. GADDY et al

74-47                                                    510 S.W. 2d 269

Opinion delivered June 17, 1974

*Smith, Williams, Friday, Eldredge & Clark,* by: *Michael G. Thompson,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Lonnie A. Powers,* Dep. Atty. Gen., for appellees and cross-appellants.

CONLEY BYRD, Justice. In a taxpayer's action by appellant Robert E. Gray, Sr., for a declaratory judgment, the trial court held invalid sections 3 and 6(d) and portions of sections 8 and 13 of Act 452 of 1973, on the basis that they conflicted with Article 19, § 15 of the Constitution of Arkansas. For reversal of the actions of the trial court in upholding the provisions of Act 452 which empowers the State Printing Specifications Review Committee to 'prepare specifications and approve all awards of state printing contracts, appellant Robert E. Gray, Sr. brings this appeal. The appellees, W. D. Gaddy, Robert Young and Gerald Fitzgerald, individually and as members of the State Printing Specifications Review Committee cross appeal with respect to sections 3, 6(d), and 13 of Act 452.

Act 452 of 1973, is an attempt by the General Assembly to clarify the powers and duties of the various State Officers and Committees who execute the laws governing the purchase of printing, stationery and other materials as re-

quired by Act 19, § 15 of the Constitution of Arkansas. Section 3 of the Act provides:

> "SECTION 3. As used in this Act and in Section 15 of Article 19 of the Constitution of the State of Arkansas the following definitions shall apply:
>
> (a). PRINTING. Printing shall mean: (1) Any item requiring raised or engraved lettering; (2) Materials with lettering thereon which because of their nature can only be prepared on a professional printing press accepting paper sheets larger than 11x17 inches utilizing highly skilled technicians; (3) Items with lettering thereon which are required in such exceptionally large quantities that their preparation can be more economically accomplished by traditional large scale, professional printing methods than by reproduction equipment as defined in Act 100 of 1967.
>
> (b) STATIONERY. Stationery shall mean letterheads and envelopes utilizing raised or engraved lettering or letterheads and envelopes which meet the definition of printing as defined in (2) and (3) of subsection (a) above."

That portion of Section 6 of the Act that is here involved provides:

> "The State Printing Specifications Review Committee shall have the following powers and duties:
>
> (a) . . .
>
> (d) To remove from future printing contracts any items now covered by such contracts which are not printing or stationery as defined in this Act. The procurement of any such items removed from the printing contracts now in force shall thereafter be governed by the provisions of the State Purchasing Law, Act 313 of 1955 as amended, or, in the case of items suitable for reproduction, by the provisions of Act 100 of 1967 and Section 14 of Act 585 of 1971, as amended."

Section 13 of the Act provides:

"SECTION 13. Section 3 of Act 100 of 1967 is hereby amended to read as follows:

'Nothing in this Act shall in any way prohibit any institution of higher learning of this State, any vocational-technical school or any other education or correctional institution from owning and operating duplicating or printing equipment primarily used in the educational or training program of the institution; and nothing in this Act nor in Section 15 of Article 19 of the Constitution of the State of Arkansas shall be interpreted to prevent such educational-correctional institutions from bidding on any printing contract covering the printing needs of said educational or correctional institution where the accomplishment of such printing jobs could reasonably be performed as a normal part of the training of students in the use of such printing equipment; nor shall this Act be construed to prohibit the State Highway Department or other agencies from using duplicating or printing equipment, acquired primarily for use in the internal operations of the agency or in furnishing reports and data of limited quantity to the Federal government or agencies thereof where the same are required in cooperative or aid programs."

Article 19, § 15 of the Constitution of Arkansas provides:

"§ 15. Contracts for stationery, printing and other supplies—Personal interest in contracts prohibited.—All stationery, printing, paper, fuel, for the use of the General Assembly and other departments of government, shall be furnished and the printing, binding and distributing of the laws, journals, department reports and all other printing and binding, and the repairing and furnishing the halls and rooms used for the meetings of the General Assembly and its committees, shall be performed under contract to be given to the lowest responsible bidder, below such maximum price and under such regulations as shall be prescribed by law. No member or officer of any department of the government shall in any way be interested in such contracts, and all such contracts shall be subject to the approval of the Governor, Auditor and Treasurer."

We have construed the foregoing provision of the Constitution to hold invalid an Act of the General Assembly that authorized the Governor to participate either directly or indirectly in the negotiating and letting of state printing contracts. See *Ellison* v. *Oliver,* 147 Ark. 252, 227 S.W. 586 (1921) and *Muncrief* v. *Hall, Secretary of State,* 222 Ark. 570, 262 S.W. 2d 92 (1953). However, in *Kegeles* v. *Ambort,* 243 Ark. 994, 423 S.W. 2d 875 (1968), we held that the State Printing Specifications Review Committee established pursuant to Act 441 of 1967, did not conflict with Article 19, § 15, *supra.*

Appellant in contending that *Kegeles* v. *Ambort, supra,* is not here controlling, points out that since the passage of Act 38 of 1971, the people who appoint the people who serve on the State Printing Specifications Review Committee serve at the will and pleasure of the Governor. Appellant also points out that the committee is given greater powers than it had under the 1967 Act involved in the *Kegeles* case, *supra.* As we view Act 452, here involved, it does not conflict with Article 19, § 15 as construed in *Ellison* v. *Oliver, supra,* and *Muncrief* v. *Hall, Secretary of State, supra.* In *Ellison* v. *Oliver, supra,* the Governor, Auditor and Secretary of State constituted a committee to negotiate and let printing contracts. In *Muncrief* v. *Hall, Secretary of State, supra,* the power to negotiate and let state printing contracts was conferred upon the Director of Finance, who served by the appointment of and at the will of the Governor. Under the Act here involved, the Secretary of State and the State printing Clerk are ex-officio members of the State Printing Specifications Review Committee. In addition after the specifications are drawn by the committee, the contracts are turned over to the Secretary of State for the purpose of advertising for bids. The Secretary of State initially determines who is the lowest responsible bidder and who should be awarded the contract. Before the contract is submitted to the Governor, the Auditor and State Treasurer for approval, the Act requires an approval of the award by the Committee. Under the circumstances we do not believe that the negotiation and the letting of State Printing contracts under Act 452, *supra,* come within the maxim involved in *Muncrief* v. *Hall, Secretary of State, supra,* that "What I cannot do myself, I cannot do through another." Neither do we find any merit in the contention that the provision requiring the Committee's approval of the contracts awards is violative of Arti-

cle 19, § 15, *supra.* The Constitution only sets the minimum approval that is required to bind the State on a printing contract. It does not prohibit more stringent standards.

Appellees, to reverse the trial court in holding Sections 3 and 6 (d) of Act 452, *supra,* invalid, point to our decision in *Parkin* v. *Day,* 250 Ark. 15, 463 S.W. 2d 656 (1971), and contend that it is permissible for the Legislature to interpret ambiguous constitutional language as to what may constitute printing, stationery, etc. In the first place it appears to us that perhaps the committee and those responsible for the drafting of Act 452 of 1973 may have misinterpreted our decision in *Parkin* v. *Day, supra,* to permit the State to go into the printing business. Such was not the purpose of our decision there. That decision only recognized that Article 19, § 15 did not prohibit State Agencies from using the same type of modern office duplicating machinery that is customarily used in business establishments generally. In the next place appellees' contention with respect to Sections 3 and 6 (d) of the Act ignores the requirements of Article 19, § 15, *supra,* that *"All* stationery, printing, paper, fuel . . . *All* other printing and binding . . . shall be performed under contract to be given to the lowest responsible bidder . . . ." Consequently, we agree with the trial court that Sections 3 and 6 (d) are invalid.

Appellees do not here contend that the trial court was in error in holding invalid those portions of Section 13 of Act 452, *supra,* that would have permitted state educational or correctional institutions to bid on state printing contracts but do contend that the trial court erred in holding invalid that portion of Section 13 which permits educational or correctional institutions to own and operate duplicating or printing equipment used in educational or training programs. Since we do not interpret the trial court's decree as prohibiting such institutions from owning and operating such equipment for educational or training purposes, we find no merit in the contention.

Affirmed.