STRAUB & LOHMAN v. GORDON, Sheriff.

CONSTITUTIONAL LAW—*Article X. construed.*—The words, "the treasury," occurring in the several sections of *Article X.* of the Constitution, mean the *State treasury*, and are not to be construed to mean the various county treasuries.

SAME—*Power of Legislature to tax pursuits, etc.*—The Legislature has power, under *Article 10, Section 17 of the Constitution*, to impose a State tax upon such privileges, pursuits and occupations as are of no real use to society, and the occupation of wholesale dealer in spirituous liquors, is such a pursuit as the Legislature may require the party, exercising the same, to pay into the State treasury a compensation for the privilege of engaging in such pursuits, and the imposition of such tax is not a tax upon *property* within the meaning of the Constitution.

STATUTORY LAW—*Act 25th March, 1871, construed.*—The Act of March 25, 1871, Section 154, providing that there shall be levied and collected as a *county tax*, upon dealers in liquors, etc., is not to be construed as an attempt to raise a State revenue by a tax upon dealers in liquors, and the Act is not in contravention of the provisions of the Constitution in regard to the raising of State revenue.

LIQUOR LICENSES—*Power of Sheriff to collect, etc.*—The acceptance of a license issued by the clerk, and tendered by the sheriff, is optional with the dealer and, in the absence of a provision of law to punish, criminally, the sheriff cannot distrain and sell property for the non-payment of the tax.

APPEAL FROM PHILLIPS CIRCUIT COURT.

HON. M. L. STEPHENSON, *Circuit Judge.*

*A. H. Garland,* for Appellants.

Upon the several propositions involved, I beg leave to refer to the cases following : *Moore vs. Trustees,* 4 *Bush* 406; 9 *Dana,* 516 ; 18 *B. Monroe* 15; 20 *La.* 585; 46 *Ill.* 392; 11 *Wis.* 35; 13 *Ill.,* 554; 3 *Ohio (State R)* 1; 37 *Maine (2 Heath)* 156; 4 *Texas* 137; 9 *Id.* 369; 3 *Sneed (Tenn.)* 120; 6 *Ind.* 13; 9 *Minn.* 273; 12 *La.,* 343; *Id.* 344; 13 *Ark.,* 752 *et seq.*

This tax is condemned by all law, and the injunction should have been granted.

ENGLISH, *Special J.*—The bill alleged, in substance, that Straub & Lohman, the appellants, were merchants of Helena,

40

doing a general grocery and produce business, and as part of their merchandise, they kept and sold spirituous liquors, but in quantities not less than one quart. That they were what were known as wholesale liquor merchants, licensed, as such, under the laws of the United States, and kept ardent spirits for sale generally to their customers; that by section 154 of an Act of the General Assembly, regulating the assessment and collection of revenue of the State, approved March 25, 1871, it was provided that, "there shall be levied and collected, as a county tax, the sum of one hundred dollars, for each and every person selling, either at wholesale or retail, any ardent or vinous liquors (except the same is sold exclusively for medicinal purposes) in any county for the term of one year or less;" that under said Act the County Court of Phillips county, at the July term 1871, assessed a tax of one hundred dollars upon all liquor dealers within said county, and the county clerk had issued licenses and placed them in the hands of D. C. Gordon, (the appellee) as sheriff of said county, to be collected from all persons selling liquor within said county; that among those thus assessed, and to whom license had been issued, were the appellants, and that the sheriff had a license for them, and was proceeding to collect the same by making a levy on their property; that said Act is unconstitutional, because *Article X, Section* 2, of the Constitution of the State, provides that, "laws shall be passed, taxing by a uniform rule, all money, credit, investments in bonds, joint stock companies or otherwise; and also, all real and personal property according to its true value in money," etc., etc. That under said clause of the Constitution, and Acts of the General Assembly, all the merchandise held and sold by them, including liquors kept by them for sale, was assessed and taxed as personal property; that by said section 154, of the Act of March 25, 1871, it was attempted to impose upon them an additional tax of one hundred dollars, without regard to the value of the property; that by *Article X, Section* 17, of the Constitution, it is provided that: "The

General Assembly shall tax all privileges, pursuits, and occupations that are of no real use to society; all others shall be exempt;" that the sale of liquor is like the sale of any other article of merchandise, and is a right common to every citizen, and in no sense a privilege within the meaning of said section of the Constitution; that before any occupation can be taxed, it should be first declared of no use to society, etc. That liquor is an article of merchandise in all States, and has been in all times; that the sale of liquor has not been declared a nuisance; but that the General Assembly, by an Act approved April 1869, entitled, "an Act regulating the incorporation and organization of municipal corporations," has conferred the power upon municipal corporations "to regulate saloons, dram shops or drinking places, or suppress the same,". and that the County Court possesses no power to license dram shops or tippling houses doing business within incorporated cities or towns, and that the city of Helena is incorporated within the purview and meaning of said Act. That the tax of one hundred dollars so assessed by said county, is illegal and unjust; that unless the sheriff was restrained, by injunction, he would proceed to enforce the collection of said tax by a levy upon the property of the appellants, to the great and irreparable injury and damage of their business, etc. Prayer for injunction, etc.

The cause was heard, in the Phillips Circuit Court, on the face of the bill, as if upon a demurrer; the injunction was refused, the bill dismissed for the want of equity, and the complainants appealed to this court.

. The Constitution provides that, "laws shall be passed taxing, by a uniform rule, all money, credit, investments in bonds, joint stock companies or otherwise; and also, all real and personal property, according to its value in money, etc.," and provides for the appraisement of real and personal property, for the purposes of taxation, at its true value in money, etc. *Art. X, Sections 2 and 3, etc.*

No doubt but that all taxes assessed upon property of any

description, under these provisions of the Constitution, whether for State, county or municipal purpose, must be imposed according to the properly appraised money value of the property. The tax complained of in the bill is not a tax upon property.

*Section seventeen* of the same article (10) of the Constitution, provides: "The General Assembly shall tax all privileges, pursuits and occupations that are of no real use to society; all others shall be exempt; and the amount thus raised shall be paid *into the treasury.*"

Money raised under this provision of the Constitution is to be paid into "*the treasury.*" What treasury, within the meaning of the language here employed, is "*the treasury?*" Surely the framers of the Constitution did not intend to embrace in the words "*the treasury*" the numerous county treasuries of the State. They manifestly meant the treasury of the State. Most of the provisions of the 10th article relate to raising revenue to support the State and to maintain its credit. The words "*the treasury*" occur in two other sections of this article. Thus, in *section* 8: "No money shall be paid out of *the treasury* until the same shall have been appropriated by law." And in *section* 15: "The principal arising from the sale of all lands, donated to the State for school purposes, shall be paid into *the treasury*, and the State shall pay interest thereon for the support of schools, at the rate of six per cent. per annum." No one can fail to see that the treasury of the State is meant by the words "*the treasury*," as used in these sections, and it is equally clear that their meaning is the same as used in the *seventeenth section.*

That the legislature has the power, under this section, to impose a State tax upon such privileges, pursuits and occupations as are of no real use to society, we have no doubt. The usual mode of imposing such a tax (if it may be called a tax) is to require persons desiring to exercise such privileges, or to engage in such pursuits or occupations, to obtain a license, at some fixed price, and to subject them to penalties

for exercising the privilege or engaging in the pursuit or occupation without obtaining the license. If the Legislature had thought proper to require wholesale dealers in spirituous liquors to pay into the treasury of the State a compensation to the public for the privilege of engaging in such pursuit, we should be slow to hold that such an act was unconstitutional, on the ground that such pursuit is of real use to society.

But the act complained of in the bill is not an attempt to raise a State revenue by a tax upon dealers in liquors. It provides that, " There shall be levied and collected *as a county tax,* the sum of one hundred dollars from each and every person selling, either at wholesale or retail, any ardent or vinous liquors (except the same is sold exclusively for medicinal purposes) in any county of this State, for the term of one year or less." *Act of 25th of March,* 1871, *sec.* 154. If this act is in conflict with any clause of the Constitution, we have not been able to find it. The Constitution of the State is a restraining and not an enabling instrument, and it may be said, in general terms, that the General Assembly may pass any law which it is not prohibited from passing by the Constitution of the State, or the Constitution of the United States. *State vs. Ashley,* 1 *Ark.,* 513.

The authority of the Legislature to regulate the exercise of privileges, or the following of pursuits and occupations, does not fall properly within its taxing powers, but within its police powers.

Pursuits that are pernicious, or detrimental to public morals, may be prohibited altogether, or licensed for a compensation to the public.

So persons desiring to exercise privileges, or engage in callings really useful to society, may be required to obtain license, and pay a reasonable compensation therefor. Such as the keepers of ferries, draymen, hackmen, and even persons who furnish meat or bread to communities. *Cool. Con. Lim.,* 200. The power to license such privileges and pursuits

has usually been conferred on county and municipal authorities.

The distinction between the raising of a State revenue by a tax upon property, and the licensing of privileges and pursuits by the local authorities, was clearly stated in *Washington vs. The State*, 13 *Ark.*, 761.

Here, as in most, if not all the States, retail dealers in liquors have been required to obtain license, and to pay a compensation therefor, and under the present, as well as former Constitutions, laws requiring such payment for license have been deemed valid and constitutional. *Henry vs. State,* 26 *Ark.*, 523.

By the 154th section of the act of the 25th March, 1871, the Legislature attempted to put wholesale dealers in liquors upon a footing with retail dealers, but there has been a failure, so far as we can find, to provide any mode of enforcing the act against the wholesale dealer. No man is obliged to apply for license to retail liquors, nor is he obliged to accept and pay for license, if issued by the proper authority, and offered to him by the sheriff or other officer. But if he engages in retailing without obtaining the license, he is liable to be punished by a criminal procedure. *Gould's Digest, Ch.* 169.

So, under the chapter relating to ferries, in *Gould's Digest,* no man was bound to apply for or accept and pay for a license to keep a ferry, but if he kept a ferry without obtaining a license, he could collect no toll, and was liable to a fine for keeping an unlicensed ferry. *Sections* 4, 14, *Chap.* 70. Other illustrations might be given, but these are deemed sufficient.

But no provision has been made by law to punish, criminally, a person who engages in selling liquors, in quantities larger than a quart, that we are aware of.

It seems, however, from the allegations of the bill, that the clerk issued, and the sheriff offered to appellants a license, and on their refusal to accept and pay for the license the sheriff was about to proceed to levy upon and sell their property,

to make the one hundred dollars which he demanded for the license. It would be a novelty for a sheriff to levy upon and sell property with a liquor license. Such process is unknown to the law, even under the Code, which has made sad havoc of most of the common law forms. .

A collector, armed with the tax-book, and the process which accompanies it, in the nature of an execution, (*Gossitt vs. Kent*, 19 *Ark.*, 602) may sell the property of all delinquent tax payers, regularly assessed and put upon his tax-book. But licenses are not returned upon the assessment list, nor placed upon the tax-book. They are simply made out by the clerk in blank, and handed to the sheriff to be supplied to such persons as desire them. At least, such was the course pursued in this case, as alleged by the bill. *See sections* 155-6, *Acts* 1871, *p.* 180.

The decree of the court below is reversed, and the cause remanded with instructions to reinstate the bill and award the injunction prayed for.

STEPHENSON, J., being disqualified, did not sit in this case.

HON. E. H. ENGLISH, *Special Judge.*