Edward E. HUGHES *v.*
Gary R. GIBBS et al

84-47                                         669 S.W.2d 451

Supreme Court of Arkansas
Opinion delivered May 21, 1984

*R. J. Brown, P.A.,* for appellant.

*Wright, Lindsey & Jennings,* for appellee Gary R. Gibbs.

*Callahan, Wright, Crow, Bachelor & Lax,* by: *Gary M. Lax,* for appellee R. J. Horner.

P. A. HOLLINGSWORTH, Justice. Edward E. Hughes, appellant, was the owner and operator of the Lighthouse and the Fiesta Club, two nightclubs in Hot Springs. In May 1977, Hughes was having severe cash flow problems with the two operations and approached Gary R. Gibbs, an attorney and the appellee, about a $5,000 loan. Hughes and Gibbs had been friends for a number of years, and Gibbs had represented Hughes on legal matters. Gibbs refused to consider a loan and referred Hughes to a bank which also was not interested in making a loan.

Hughes returned to Gibbs and the decision was then made to form H & L Entertainment, Inc. to attract investors to contribute capital for a share of the ownership of the clubs. Gibbs was retained as the lawyer for the corporation. Richard Lewis and R. J. Horner were interested in investing in the business with Hughes owning 300 shares of voting stock and 400 shares of nonvoting stock and Lewis owning 300 shares of voting stock. Lewis agreed to contribute $20,000 and Hughes agreed to convey the assets he owned in the club to the corporation. Lewis paid $6,000 in cash for his stock and borrowed $7,000 each from Gibbs and Horner for the balance of his contribution. All of the parties wanted to sell the clubs at an opportune time which was projected to be at the beginning of the racing season in February 1978. On July 27, 1977, Lewis sold his shares of stock to Gibbs and Horner and withdrew from participation in the corporation. Billy Melton bought the fixtures of the Fiesta and operated the club until December 1977 when the corporation repossessed the property. The Lighthouse was closed and the fixtures sold to reduce the debt. Hughes attempted to run a portion of the business with very limited success.

Hughes disclosed to Gibbs and Horner that he had located a prospective buyer but more capital was needed to prevent foreclosure until the sale could be concluded. Hughes sold his 300 shares of voting stock and 100 shares of nonvoting stock to Gibbs for $15,000. A small percentage of this money went to Hughes and the balance went to satisfy delinquent corporate debts. Upon transfer of the stock, Gibbs became chairman of the board of directors on December 29, 1977.

In January 1978, Hughes sold his remaining 300 shares (30% nonvoting interest) to Tim O'Brien in exchange for a promissory note in the amount of $30,000. Gibbs drafted the papers for this transaction. Hughes was no longer a participant in the affairs of the business. O'Brien leased the Fiesta and borrowed $10,000 from the corporation which in turn had borrowed the money from Gibbs. O'Brien pledged his 300 shares of stock to the corporation as collateral for the loan and to secure the note to Hughes. The corporation had a prior right over Hughes to foreclose on the stock in the event O'Brien defaulted.

By March 13, 1978, O'Brien was delinquent and the corporation gave notice and foreclosed his stock and re-possessed the fixtures and premises.

On June 15, 1978, the property was sold for $142,500 of which $15,000 was paid in cash and the balance by note in favor of the corporation. Subsequently, the corporation was dissolved and the note was assigned to Gibbs and Horner as the remaining stockholders.

Hughes filed suit against Gibbs and Horner for an accounting and additionally against Gibbs for damages for breach of duties as a fiduciary and attorney. The trial court ruled in favor of Gibbs and Horner, from which judgment comes this appeal. The appeal is before us pursuant to Rule 29 (1)(c) involving the interpretation or construction of rules of the Supreme Court.

We affirm.

The trial court ruled that Gibbs was not acting as an attorney at any relevant time for Hughes and therefore was not guilty of legal malpractice. There is ample evidence in the record to support this conclusion. Hughes' testimony was in fact supportive of this position:

Q.: Mr. Gibbs was not acting as your attorney when you first went to him in May of 1977 to borrow money, was he?

A.: I don't think so, no.

Q.: He wasn't representing you on any active legal matter, was he?

A.: At that time, no.

Q.: And you didn't go to him to hire him as a lawyer, did you?

A.: No.

Q.: You went to him to borrow some money from him, did you not?

A.: Yes.

The record further reflects that Gibbs was acting only as attorney for the corporation and could not represent any of the individuals due to the potential conflict of interest.

At first blush it would appear that Gibbs was representing some party in the transfer of stock to Tim O'Brien. However, a review of the record reveals that the details of the sale were negotiated entirely by Hughes, and Gibbs did no more than reduce the agreement to writing at Hughes' direction. Hughes offered no evidence as to the manner in which Gibbs breached any obligation to him other than asserting that the agreement prepared by Gibbs did not afford adequate security to Hughes.

The record further reveals that Hughes stated in testimony that he fully understood at the time he executed the agreement that O'Brien had already pledged the stock to the corporation as security. We have said previously that an attorney does not, as a matter of law, represent conflicting interests in this particular situation. *Sikes* v. *Segers,* 266 Ark. 654, 587 S.W.2d 554 (1979) citing *American-Canadian Oil & Drilling Corp.* v. *Aldridge & Stroud,* 237 Ark. 407, 373 S.W.2d 148 (1963) on this point.

The only way Hughes could have substantiated his claim was to have offered proof Gibbs contemporaneously performed services for him personally, which he failed to do.

Thus no evidence of an attorney-client relationship existed. The relations which had previously existed were terminated prior to the time period in question. The chancellor's findings will not be reversed unless they are clearly erroneous. *Madison Bank & Trust* v. *First National Bank of Huntsville,* 276 Ark. 405, 635 S.W.2d 268 (1982).

A review of the record reveals that Horner acted in good faith and performed no act in breach of his fiduciary duty as a director.

The judgment is affirmed.