George D. CAMMACK, et al *v.*
Hugh B. CHALMERS, et al

83-224                                    680 S.W.2d 689

Supreme Court of Arkansas
Opinion delivered December 3, 1984

*Daily, West, Core, Coffman and Canfield,* for appellants.

*Friday, Eldredge & Clark,* for appellee.

P. A. HOLLINGSWORTH, Justice. In 1957, Kate G. Cammack, now deceased, conveyed forty acres of land within the City of Little Rock to the Board of Trustees of the University of Arkansas. A separate contract delivered simultaneously with the deed stipulated among other matters that the Trustees would develop the property into the University's "Cammack Campus." Appellants, the sole devisees and heirs at law of Mrs. Cammack, contend that Mrs. Cammack's gift resulted in a charitable trust and that the Trustees have so unreasonably delayed fulfilling the terms of the trust that it has now become impossible and impracticable to carry out its purpose. Therefore, the appellants contend, the forty acres should be divested from the University and given to them.

From the decree of the Chancery Court ordering title to the property to remain in the Board of Trustees for the University of Arkansas, subject to the performance of certain trust obligations with the Trustees given until January 1, 1997, to demonstrate their good faith intentions, the appellants appealed. The appellees in their cross-appeal, state that the trial court should have dismissed the appellants' claim under Ark. Const. art. 5, § 20. The appeal is before us pursuant to Rule 29 (1)(f) as it involves an injunction directed to state officials. Also Rule 29 (4) is

applicable because an issue of significant public interest is involved.

We reach a limited decision today that does not allow the University of Arkansas Trustees to ignore their commitments to donors. The appellees, University of Arkansas Trustees, request that we hold this suit cannot be maintained under Ark. Const. art. 5, § 20. It declares, "The State. . .shall never be made defendant in any of her courts." We view our cases as allowing actions that are illegal, are unconstitutional or are *ultra vires* to be enjoined. The legislature designates the Board of Trustees of the University as the corporate entity capable of being sued. Ark. Stat. Ann. § 80-2804 (Repl. 1980) and § 64-1907 (Repl. 1980). We have recognized that officers of state agencies may be enjoined from acts which are *ultra vires*, in bad faith or arbitrary. *Toan, Comm'r. v. Falbo,* 268 Ark. 337, 595 S.W.2d 936 (1980); *Arkansas State Game and Fish Comm'n v. Eubank,* 256 Ark. 930, 512 S.W.2d 540 (1974); and *Harkey* v. *Matthews,* 243 Ark. 775, 422 S.W.2d 410 (1967). The chancellor's finding that he had jurisdiction to enjoin the action of the University of Arkansas Trustees under the facts of this case is consistent with views we have previously expressed.

Appellants maintain that they are entitled to a judgment by default. The facts are as follows: Appellants filed the complaint on August 7, 1979, and appellees filed a timely special appearance and motion to dismiss. The trial court overruled the motion on August 29, 1980 and requested precedents from both parties for a proposed order. After receiving copies of precedents from both parties, the chancellor entered his order on November 17, 1980, overruling appellees' motion to dismiss and giving appellees twenty-five days from notice of the order to answer. Due to circumstances in the clerk's office, the appellees did not receive a copy of the order. On February 4, 1981, counsel for appellants notified counsel for the appellees that the order had been entered and volunteered to send a copy to him. Counsel for appellees never received a copy of the order and did not file an answer within twenty-five days of notice by appellants' counsel that the order had been entered. A

responsive pleading was filed by appellees on April 10, 1981. The chancellor denied the motion of appellant for default judgment. We have held in *Burns* v. *Shamrock Club,* 271 Ark. 572, 609 S.W.2d 55 (1980), that:

> It is within the sound discretion of the trial court to grant or deny a motion to set aside a default judgment, and the question on appeal is whether there has been an abuse of that discretion. Default judgments are not favorities of the law and should be avoided when possible. (citations omitted).

Furthermore, ARCP Rule 55 provides that a default judgment should be entered when a party "fails to appear or otherwise defend." Here, the appellees defended when they filed their motion to dismiss. This holding is also consistent with Ark. Stat. Ann. § 27-1160 (Repl. 1979) which provides that, "The court must in every stage of an action, disregard any error or defect in the proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." There was no prejudice to these appellants by the appellees' delay in filing their answer.

The appellants also contend that the trial court's finding that it is not yet impossible to carry out the wishes of Mrs. Cammack is clearly against the preponderance of the evidence. The appellants base their argument on the fact that Edward Stone, the architect selected by Mrs. Cammack, has since died. The chancellor held:

> While it is no longer possible to employ Edward Stone to perform the architectural work, the charitable purpose of the trust was not to provide employment for Mr. Stone. Mrs. Cammack realized Mr. Stone's services might not be available and the availability of Mr. Stone was not essential to the fulfillment of the trust.

The chancellor's findings will not be reversed unless they are clearly erroneous. *Hughes* v. *Gibbs,* 282 Ark. 488, 669 S.W.2d 451 (1984). We do not find that the chancellor's holding was clearly erroneous.

We next address the cross-appeal of the appellees and their contention that the chancellor erred in concluding that Mrs. Cammack, with the deed and accompanying agreement, created an express charitable trust for a particular, not general, charitable purpose. It is undisputed that there is no mention in the agreement or in the deed of a reversionary interest. Restatement (Second) Trusts § 349 (b) provides that a charitable trust may be created by "a transfer *inter vivos* by the owner of property to another person to hold it upon a charitable trust." Section 413, comment 1 concerns the failure of a charitable trust. It provides that:

> if the settlor manifested an intention to restrict his gift to the particular charitable purpose designated, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, the trust fails and the trustee holds the property upon a resulting trust for the settlor or his estate.

The chancellor found that Mrs. Cammack clearly limited the use of the property to the educational and cultural program of the University. This was the specific charitable purpose. Therefore, the chancellor correctly held that if the Board fails to demonstrate its good faith intentions to develop the Cammack property by 1997, the property shall revert to the appellants. It was within his discretion to establish the 1997 deadline to best effectuate the charitable purpose of Mrs. Cammack's gift.

The lower court felt that it is time to decide this case on the merits and quoted an excerpt from our decision in *Foot's Dixie Dandy* v. *McHenry, Adm'r.* 270 Ark. 816, 607 S.W.2d 323 (1980):

> Justice Holmes made the remark many years ago that "Men must turn square corners when they deal with the government." *Rock Island, Arkansas & Louisiana R.R.* v. *United States*, 254 U.S. 141, 143 (1920). Years later, two commentators added the logical corollary to Holmes' remark: "It is hard to see why government should not be held to a like standard of rectangular rectitude when dealing with its citizens." McGuire &

Limet, *Hobson's Choice and Similar Practices in Federal Taxation*, 48 Har. L. Rev. 1281, 1299 (1935). We agree with both ideas.

We agree and affirm on the direct appeal and cross-appeal.

Affirmed.

HUBBELL, C.J., concurs.

DUDLEY, J., and Special Justice ALBERT GRAVES Sr., dissent.

GEORGE ROSE SMITH, J., not participating.

WEBB HUBBELL, Chief Justice, concurring in part; dissenting in part. In order to reach a just result, the majority modifies Art. 5, § 20 of the Arkansas Constitution. Governmental immunity is generally a product of the common law, having been "derived by implication." *Keifer & Keifer* v. *R.F.C.*, 306 U.S. 381 (1939); *Monaco* v. *Mississippi*, 292 U.S. 313 (1934). However, immunity in Arkansas is constitutionally mandated by Art. 5, § 20, and cannot be cast aside at the whim of the judiciary. The constitution is "not an enabling, but a restraining act" [*Straub* v. *Gordon*, 27 Ark. 625 (1872)], and the duty of the judiciary is to uphold it. *Muncrief* v. *Hall, Secretary of State*, 222 Ark. 570, 262 S.W.2d 92 (1953).

We could reach the same result by upholding the trial court's finding that a charitable trust was created by Mrs. Cammack's bequest. The University Trustees are then additionally trustees of this separate charitable trust, and they act or fail to act not as representatives of the State but as trustees of Mrs. Cammack's charitable trust. We need not reach governmental immunity.

Also, the chancellor cannot impose a reverter to the heirs. *State ex. rel. Atty. General* v. *Van Buren School Dist. No. 42*, 191 Ark. 1096, 89 S.W.2d 605 (1936). In the event of the Board's failure to develop the bequest within a reason-

able period of time, the trustees may be removed and new ones appointed to comply with the terms of the charitable trust.

ROBERT H. DUDLEY, Justice, dissenting. In 1957 Kate G. Cammack, now deceased, made an *inter vivos* gift of land within the City of Little Rock to the Board of Trustees of the University of Arkansas. A separate contract delivered simultaneously with the deed stipulated that the Trustees would develop the property into the University's "Cammack Campus." Appellants, the sole devisees and heirs at law of Kate Cammack, contend that the gift resulted in a charitable trust and that the Trustees have so unreasonably delayed fulfilling the terms of the trust that it has now become impossible and impracticable to carry out its purpose and therefore, appellants contend, the forty acres should be divested from the state and vested in them.

The Chancery Court ordered that title to the property should remain in the Board of Trustees of the University of Arkansas trustees until January 1, 1997, and, if the trustees do not demonstrate their good faith in developing Cammack Campus by that time, the land should be divested from the state and vested in appellants. The appellees have filed a cross-appeal advancing, among other points, the sovereign immunity clause.

Article 5, § 20 of the Constitution of the State of Arkansas declares: "The State . . . shall never be made defendant in any of her courts." This court has expressly held that a suit against the Board of Trustees of the University of Arkansas is a suit against the State. *State Comm'r of Labor* v. *University of Arkansas Board of Trustees,* 241 Ark. 399, 407 S.W.2d 916 (1966). This decision is in accord with our earlier decisions interpreting Arkansas' sovereign immunity clause. In *The Engineering Co.* v. *Kays,* 106 Ark. 174, 152 S.W. 992 (1913), a case precisely in point, held that a replevin suit against the trustees of the predecessor institution to Arkansas State University to recover fixtures was a suit against the State. In that case we stated:

Appellees have no interest, whatever, in the property, in their individual capacity, nor connection with it, except as representatives of the State as trustees of said school. The school, itself, is but a governmental agency not authorized by the Statutes to sue and be sued and the recovery is sought under the terms of the contract made with this governmental agency necessarily involving its rights and being in effect and in fact but a suit against the State. No relief is sought against appellees in their individual capacity and none can be had against them as representatives of the agency of the State and its sovereignty, for our Constitution declares: "The State of Arkansas shall never be made defendant in any of her courts."

*Id.* at 177, 152 S.W. at 993. In *Watson v. Dodge,* 187 Ark. 1055, 63 S.W.2d 993 (1933), we held that any suit which has the direct or indirect purpose and effect of coercing the State is one against the state. The court quoted *Hagood v. Southern,* 117 U.S. 52 (1885), which stated:

Though not nominally a party to the record, it (the State) is the real and only party in interest, the nominal defendants being the officers and agents of the State, having no personal interest in the subject-matter of the suit, and defending only as representing the State. And the things required by the decrees to be done and performed by them are the very things which, when done and performed, constitute a performance of the alleged contract by the State. The State is not only the realy party to the controversy, but the real party against which relief is sought by the suit.

The Supreme Court of the United States reviewed our decisions in *Arkansas v. Texas,* 346 U.S. 368 (1953). That Court followed our cases and stated:

The University which was created by the Arkansas legislature, is governed by a Board of Trustees appointed by the Governor with consent of the Senate. The Board, to be sure, is "a body politic and corporate" with power to issue bonds which do not pledge the

> credit of the State. But the Board must report all of its expenditures to the legislature, and the State owns all the property used by the University. The Board of Trustees is denominated "a public agency" of the State, the University is referred to as "an instrument of the State in the performance of a governmental work", and a suit against the University is a suit against the State.

*Id.* at 370.

In the case at bar, the Board of Trustees is once again made a party to a lawsuit, the direct effect of which would be to deprive the State of property — the forty acres. The trustees have no interest whatever in this property individually. Their sole connection with the property has been as representatives of the State in their capacity as University trustees. By precedent of all of our cases, this is a suit in which the State is the real party and, therefore, it cannot be maintained.

The majority opinion refers to three opinions of this court as authority for maintenance of this suit. Those cases are not fairly applicable. They hold that equity may restrain acts of public officers or agencies which are beyond the scope of their authority, but if the public officers or agencies have authority to act the suit may not be maintained. *Toan, Comm'r* v. *Falbo,* 268 Ark. 337, 595 S.W.2d 936 (1980); *Arkansas Game & Fish Comm'n* v. *Eubank,* 256 Ark. 930, 512 S.W.2d 540 (1974); *Harkey* v. *Matthews,* 243 Ark. 775, 422 S.W.2d 410 (1967). The Board of Trustees of the University of Arkansas has the authority to manage the University's property and its actions are not beyond the scope of its authority. The majority opinion does not dispute this. Equally as significant, this is not a suit for an injunction. It is a suit to take the land from the State. The State is the real party to the controversy, and the real party against which relief is sought.

The majority have chosen not only to ignore article 5, § 20 of the Constitution of Arkansas and our cases construing it, but to do so without explanation. Two of the results are an unenunciated philosophy of jurisprudence

and uncertainty in the law. Examples of each are: under what circumstances are clear constitutional provisions usurped by this court's concept of fairness and, can a suit against the state be maintained for monetary damages as well as for real estate? I would reverse on cross-appeal because of the sovereign immunity clause of the Constitution.

I am authorized to state that Special Justice Albert Graves, Sr. joins in this dissent.