B & F ENGINEERING, INC. *v.* Michael COTRONEO

91-217                                    830 S.W.2d 835

Supreme Court of Arkansas
Opinion delivered April 20, 1992

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *Bruce Munson* and *Valerie Denton*, for appellant.

*Kitterman Law Firm*, by: *Gregory S. Kitterman*; and *Perroni, Rawls, Looney & Barnes*, by: *Samuel A. Perroni*, for appellee.

STEELE HAYS, Justice. This is a tort case arising from an automobile accident. On the afternoon of October 23, 1990, the appellee, Michael Cotroneo, was driving his pickup truck westbound on Interstate 30 when he was struck head-on by a vehicle driven by G.W. Franks. The Franks vehicle was owned by the appellant, B & F Engineering, Inc. (B & F), Frank's employer. Franks was intoxicated and driving on the wrong side of the highway. G.W. Franks died following the collision and Michael Cotroneo sustained serious injuries, as did his passenger, Anthony Martin.

Two lawsuits were filed as a result of the collision. Anthony Martin filed suit in November of 1990 in Saline Circuit Court

against Martin Eisele, Special Administrator for G.W. Franks, deceased, and B & F Engineering. That complaint was answered in a timely manner. The other lawsuit was filed against B & F on January 25, 1991, by Michael Cotroneo. Cotroneo's summons and complaint were properly served on Donald Beavers, agent for B & F, who forwarded them to B & F's liability insurer. No answer was filed on behalf of B & F in response to Cotroneo's complaint.

On February 19, 1991, Cotroneo filed a motion for default judgment alleging that more than twenty days had elapsed since B & F was served and it had failed to respond. Nine days later B & F filed a general denial and response to the default judgment motion, asserting that its failure to answer was due to mistake, inadvertence or excusable neglect by its insurer in failing to notify counsel of the complaint. The response also asked the court to extend the time for B & F to file an answer pursuant to Ark. R. Civ. P. 6, to deny Cotroneo's motion for default judgment and to consolidate the two actions arising out of the same accident. Attached to the response was an affidavit of Samuel M. Mingledorff, Senior Claims Examiner for the Nashville Regional Office of the State Auto Insurance Companies. In his affidavit Mingledorff stated that he had received by facsimile transmission a complaint and summons styled *Michael Cotroneo* v. *B & F Engineering, Inc.*, but he failed to recognize that it was a separate cause of action from the suit entitled *Martin* v. *Eisele, Special Administrator for G.W. Franks, Deceased and B & F Engineering, Inc.*, arising out of the same accident and which the insurance company was already defending. Due to that misconception, he did not notify counsel of the second summons and complaint.

After a hearing on the motion for default judgment, the Saline Circuit Court entered a default judgment against B & F and scheduled a jury trial on the issue of damages. The jury awarded Cotroneo one million four hundred thousand dollars compensatory damages and one million dollars in punitive damages. B & F raises four points of error on appeal.

The first point on appeal is whether the trial court erred in entering an order of default judgment against B & F. Cotroneo contends that B & F waived its right to raise this issue on appeal by failing to file a motion to set aside a default judgment. The

grounds for setting aside such entries are in Rule 55(c) of the Arkansas Rules of Civil Procedure. B & F argues, however, that since it requested an extension of time to file its answer before the default judgment was actually entered, Ark. R. Civ. P. 6(b)[1] applies.

B & F's response to Cotroneo's default judgment motion asked the court to deny the motion. A hearing was held in which the appellant argued against entry of the default judgment. We have not had the opportunity to consider this issue since the 1990 amendment to Rule 55. Accordingly, we have turned to federal court decisions since the standard for setting aside a default judgment in Ark. R. Civ. P. 55(c) is taken from the federal rule and should be interpreted in accordance with federal case law. *See* Addition to Reporter's Notes to Rule 55, 1990 Amendment. The federal courts regard opposition to a motion for entry of a default judgment as a motion to set aside a default judgment, hence, Rule 55 governs the resolution of this issue. *See Kohlik* v. *Atlantic Corp. Inc.*, 112 F.R.D. 146 (S.D.N.Y/1986); *United Coin Meter Co., Inc.* v. *Seaboard Coastline R.R.*, 705 F.2d 839 (6th Cir. 1983); *Breuer Electric Mfg. Co.* v. *Toronado Systems of America, Inc.*, 687 F.2d 182 (7th Cir. 1982); *Meehan* v. *Snow*, 652 F.2d 274 (2nd Cir. 1981); 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 2d* § 2692 (1983); 21 *Federal Procedure, L. Ed.* § 51:17 (1984).

The standard by which we review the granting or denial of a motion to vacate a default judgment is whether the trial court abused its discretion. *Cammack* v. *Chalmers*, 284 Ark. 161, 680 S.W.2d 689 (1984). Default judgments are not favorites of the law and should be avoided when possible. *Id.* In fact, the purpose for the 1990 amendment to Ark. R. Civ. P. 55 was to liberalize Arkansas practice regarding default judgments and the revised rule reflects a preference for deciding cases on the merits rather than on technicalities. *See* Addition to Reporter's Notes to Rule

---

[1] Ark. R. Civ. P. 6(b) provides in part, "[w]hen by these rules or by notice given thereunder or by order of the court an act is required or allowed to be done at or within a specified time, the court for cause shown may at anytime in its discretion . . . (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of mistake, inadvertence, suprise, exclusable neglect, or other just cause. . . ."

55, 1990 Amendment.

■ That observation may seem inconsistent with our affirmance of the default judgment in this case; however, we do not mean to retreat from the intent and spirit of the recent amendment to Rule 55 and choosing between those conflicting policies in this case was not an easy task. While we subscribe to the concept of efficient and expeditious disposition of litigation, we recognize as well that the interests of justice are generally best served when cases are resolved on the merits. Nevertheless, under the circumstances of this case we are constrained to hold that the trial court did not abuse its discretion by granting the default judgment in favor of the appellant. To hold otherwise would, we believe, give sanction to a slipshod treatment of writs of summons by defendants.

Arkansas R. Civ. P. 55(c) provides that a court may set aside a default judgment previously entered if it finds that the default was due to mistake, inadvertence, surprise or excusable neglect. The appellant argues that the insurance company's failure to recognize that the complaint concerned a different lawsuit could only be characterized as a mistake.

"The court's have not been particularly liberal in granting relief from defaults attributable to the inaction of insurance companies which have assumed the defense of lawsuits against their insureds." 21 *Federal Procedure, L. Ed.* § 51:22 (1984). *See also Pena* v. *Seguros La Comerial*, S.A. 770 F.2d 811 (9th Cir. 1985); *Spica* v. *Garczynski*, 78 F.R.D. 134 (E.D. Pa. 1978); *Davis* v. *Safeway Stores, Inc.*, 5342 F.2d 489 (5th Cir.1976); *Robinson* v. *Bantam Books, Inc.*, 49 F.R.D. 139 (S.D.N.Y. 1979); *Wagg* v. *Hall*, 42 F.R.D. 589 (E.D. Pa. 1967). However, there are cases to the contrary, and, ironically, we find one particularly informative when compared with the facts of the instant case, even though the opposite result was reached. In *Stuski* v. *United States Lines Co.*, 31 F.R.D. 188 (E.D. Pa. 1962), a negligence action, it was shown that the plaintiff had instituted another action against the defendant utilizing a substantially identical complaint. Defense counsel contended that because the complaints were virtually identical the insurer must have confused them so that its failure to return the one involved in the second case was due to mistake. The court accepted this

argument and granted the motion to set aside a default judgment noting that the defendant had not been guilty of any gross neglect, that no prejudice would result to the plaintiff from setting aside the default and that the defendant had a meritorious defense to the action.

Like the *Stuski* court, we see no substantial prejudice to the appellee in this case from setting aside the default, however, *Stuski* is distinguishable and instructive in two respects. First, the style of the two pleadings that were confused in *Stuski* were identical, whereas in this case the two styles had marked dissimilarities. The plaintiffs were different and Cotroneo's complaint was solely against B & F whereas the other lawsuit named an additional defendant.[2] We think the *Stuski* incident represents the type of "mistake" Rule 55(c) seeks to remedy while the error by the insurer in this case must be classified as inexcusable neglect. We are aware of no case that would require us to set aside a default judgment when *any* mistake was made by a defaulting party. That would render almost meaningless the discretion a trial court has when deciding a motion to set aside a default judgment. We believe the more reasoned approach is to consider the nature of an alleged mistake on a case by case basis.

The second difference is that in *Stuski* the defaulting party had a meritorious defense and here the defense counsel did not offer any defense on the merits to the original action. Arkansas R. Civ. P. 55(c) states in part, "[t]he party seeking to have the judgment set aside must demonstrate a meritorious defense to the action. . . ." The federal courts also require some showing of a meritorious defense before granting relief from a default judgment. 10 C. Wright, A. Miller & M. Kane, *supra* at § 2697; 21 *Federal Procedure, L. Ed, supra* at § 51-23. A majority of courts that have considered the question refuse to accept general denials or conclusory statements that a defense exists and "the only real exception to the requirement is where the judgment is void, such as for lack of jurisdiction." 21 *Federal Procedure, L. Ed., supra; see also Bruce* v. *Paxton*, 31 F.R.D. 197 (E.D. Ark. 1962). The

---

[2] The first suit is *Martin v. Eisele, Special Administrator for G.W. Franks, Deceased and B & F Engineering, Inc.* The second lawsuit is *Michael Cotroneo v. B & F Engineering, Inc.*

underlying basis for this theory is to determine whether there is a possibility that, after a full trial, the outcome of the suit would be contrary to the result achieved by the default. *Id.* Finding an abuse of discretion where the appellant offers no defense is difficult to say the least.

■ For its second point, B & F contends that it was error for the trial court to exclude evidence it proffered in mitigation of punitive damages. The evidence the court refused to admit was testimony, from B & F's current and past presidents, that Franks was a dependable employee and had never had any problem with drinking and driving company trucks. Also, the custodian of records from the Department of Finance was prepared to testify that Franks' record showed no citation for the three years ending in October 1990 and an earlier search of the records showed no violation of sufficient number of points which would cause a record to be kept on Franks. In refusing to allow the appellant to admit the evidence set forth above, the court stated that the evidence applied to the phase of facts that are in the complaint and it contradicts the facts admitted by the default judgment.

> Under the Arkansas Rules of Civil Procedure a default judgment establishes liability, but not the extent of damages. Proof is still required to establish the amount of damages except in suits in which a verified account has been submitted. After default the defendant has the right to cross-examine the plaintiff's witnesses, to introduce evidence in mitigation of damages, and to question on appeal the sufficiency of the evidence to support the amount of damages awarded. *The defaulting defendant may not introduce evidence to defeat the plaintiff's cause of action.* H. Brill, *Ark. Law of Damages* (2nd ed.), § 8-1 (1990). [Emphasis added.]

■ There is a fine line between contradiction and mitigation in this context. But in this case it appears the appellant sought to circumvent the allegation in Cotroneo's complaint that B & F had knowledge of Franks's propensity to drink and drive, therefore, the court did not err in excluding it.

B & F also challenges the trial court's decision to allow certain testimony by Dr. Charles Venus. Dr. Venus testified as an expert for the appellee regarding dollar figures he had computed

concerning the appellee's loss of income and loss of household services. Dr. Venus calculated his present value figures when he was under the assumption that the appellee was one hundred percent disabled and testified to two dollar amounts for loss of future income and loss of household services, $629,688 and $99,807, respectively. Venus testified that if it was determined that Cotroneo's disability was less than one hundred percent, then the calculations would be based upon the correct percentage. On cross-examination the figures based upon twenty-four percent disability came into evidence because prior to Venus's testimony, Cotroneo's treating physician testified that the appellee had a twenty-four percent anatomical impairment. The appellant argues the figures based upon the appellee having one hundred percent disability were misleading and confusing to the jury.

■ Any prejudice associated with its introduction was alleviated by the admission of the correct figures and Dr. Venus's instruction to reduce the calculations proportionately if the disability was less than one hundred percent. When there is a conflict in the evidence the determination by the jury of the issues is conclusive. *Butler Mfg. Co.* v. *Hughs*, 292 Ark. 198, 729 S.W.2d 142 (1987). Moreover, the weight and value to be given to the testimony of expert witnesses is the exclusive province of the jury. *Id.*

For its final allegation of error the appellant argues that the damages awarded are so excessive that they appear to have been given under the influence of passion or prejudice.

In *W.M. Bashlin Co.* v. *Smith*, 277 Ark. 406, 463 S.W.2d 526 (1982), this court held the question is whether the verdict "shocks the conscience" of the court or demonstrates that jurors were motivated by passion or prejudice.

The appellee presented extensive evidence of his medical injuries suffered as a result of the accident and the fact that Cotroneo was an active man who engaged in physical labor as a carpenter prior to the accident. Dr. David Barnett, an orthopedic surgeon who treated the appellee, testified about his injuries. Barnett testified that upon arrival in the emergency room after the accident Cotroneo had a very severe fracture of his right foot and his heel bone. With reference to his foot, the bone was literally crushed and pushed off to the side when it was broken,

leaving the bone bulging out the side of the foot. As the bone was pushed outward the arteries, nerves and tendons were displaced. Cotroneo suffered permanent damage to his heel pad which Barnett characterized as like walking on bone. The doctor testified that when the surgeons took Cotroneo to surgery to stabilize the bone they could see that it was so broken that there was no way to fully repair it. Cotroneo's foot also required skin grafts because the accident removed the skin over an area of his foot. By the time of trial he had undergone four operations and had developed severe traumatic arthritis. He also had an unstable fracture of his forearm on the right with a dislocation in the wrist of that bone. He had facial fractures, a skull fracture and in general, had multiple trauma where there were bruises and contusions.

Dr. Bob Moffett, Cotroneo's plastic surgeon, testified about the broken bones, lacerations and bruises to the face. Cotroneo fractured his jaw bone and hinges, his nose, cheek bones and the bottom portion of his skull. After Cotroneo had been stabilized Moffett had to wire his teeth together and perform a tracheotomy to provide an airway. Moffett testified that he had performed five surgeries on Cotroneo's face and that Cotroneo will probably never be free of pain.

There was a significant amount of testimony about the probability of Cotroneo having additional surgery and how he may never achieve normal movement in the area where his bones were fused in his foot. Also his hearing and sight were affected by the accident and he can no longer chew without pain. Additionally, there was testimony regarding how the accident affected his relationship with his two young sons and how the appellee was finding it difficult to obtain work. Photographs shown to the jury reveal the severity of Cotroneo's injuries.

■ In light of the evidence of Cotroneo's injuries we do not regard the award of compensatory damages as shocking. Admittedly the amount awarded is high but there was no compelling proof of prejudice or influence of such kind as to warrant disturbing the jury award. *See Price* v. *Watkins*, 283 Ark. 502, 678 S.W.2d 762 (1984).

■ We also affirm the punitive damage award. The evidence that Franks was operating the vehicle while under the

influence of alcohol when his blood alcohol level was .22 readily supports the verdict for punitive damages. Because Franks was acting in the scope of his employment at the time of the accident, his acts of operating a vehicle when impaired by alcohol were imputed to his employer. In *Honeycutt v. Walden*, 294 Ark. 440, 743 S.W.2d 809 (1988), we addressed this situation:

> We have held many times that malice may be inferred from the operation of a motor vehicle, a potentially lethal machine, by one whose judgment, responses and coordination are impaired by alcohol.

*Id.* at 442, 743 S.W.2d at 810.

Affirmed.

Brown, J., dissents.

ROBERT L. BROWN, Justice, dissenting. This case involves a tragic accident, and the allegations are of the most serious kind. Nevertheless, the circumstances of this case are precisely the kind that the expanded Ark. R. Civ. P. 6(b) was intended to embrace — a good faith mistake resulting in a failure to answer a complaint on time.

The former Rule 6(b) provided for an extension of time only when failure to act was due to "excusable neglect, unavoidable casualty or other just cause." The current Rule 6(b), which became effective on February 1, 1991, broadened the scope of "just causes" considerably:

> (b) Enlargement: When by these rules or by a notice given thereunder or by order of the court an act is required or allowed to be done at or within a specified time, the Court for cause shown may at any time in its discretion . . . (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of *mistake, inadvertence, surprise, excusable neglect, or other just cause* . . . .

*In the Matter of the Changes to the Arkansas Rules of Civil Procedure, the Arkansas Inferior Court Rules, and the Administrative Orders of the Arkansas Supreme Court*, 304 Ark. 733 (1990). (Emphasis added.) The majority decision states the

obvious, which is that the amendment was intended "to liberalize Arkansas practice."

Here, B & F Engineering contends by its agent's affidavit that it mistook the second complaint arising out of this accident as duplicative of the first compliant which it had already forwarded to the company's counsel. Because of this erroneous assumption, the agent failed to act on Cotroneo's complaint. Service of process was had on B & F on January 25, 1991. No responsive pleading was filed by B & F by February 14, 1991, and on February 19, 1991, Cotroneo moved for a default judgment. B & F countered that the court should extend the period to answer under Rule 6(b) because its failure to answer was the result of mistake, inadvertence, surprise, exclusable neglect, or other just cause. Also, on February 28, 1991, B & F answered Cotroneo's complaint.

The trial judge heard the motion for default judgment on March 19, 1991, and ruled in Cotroneo's favor. In doing so he stated:

> There was a late filing of the answer, there was sufficient time to file the answer. Just simply making, assuming a fact that did not exist, assuming a fact that was contradicted by the face of the pleadings, to me, is not any kind of an *excuse* for a default judgment. And I don't necessarily think a default judgment is a harsh remedy. (Emphasis added.)

He then added later on in his ruling: "The answer was simply filed late and there is absolutely no *excuse* [for] it." (Emphasis added.)

The trial judge hinged his decision on the fact that no legitimate excuse existed for B & F's inaction. His ruling under former Rule 6(b) would be correct in that B & F's neglect does not appear to be excusable. However, this failure to act does qualify as a mistake or inadvertence, and B. & F's explanation, under oath, as to how it happened seems entirely plausible. Certainly, two complaints had been filed as a result of the same accident.

The clear purpose behind our change in Rule 6(b) and Rule

55(c) is best expressed in the Reporter's Note to Rule 55:[1]

> Rule 55 has been substantially amended to liberalize Arkansas practice regarding default judgments. The revised rule, which reflects a clear preference for deciding cases on the merits rather than on technicalities, is intended to avoid the harsh results that often flowed from the previous version. Because the rule represents a significant break from prior practice, many cases decided under the old rule and the statute from which it was derived will no longer be of precedential value.

> Under revised Rule 55(a), the entry of a default judgment is discretionary rather than mandatory. In deciding whether to enter a default judgment, the court should take into account the factors utilized by the federal courts, including: whether the default is largely technical and the defendant is now ready to defend; whether the plaintiff has been prejudiced by the defendant's delay in responding; and whether the court would later set aside the default judgment under Rule 55(c).

As the majority says, defaults are not favored, and we have announced a clear preference in favor of trial on the merits in the Rule 6(b) amendment. The default in this case is due to a technicality, and Cotroneo is not prejudiced by a fourteen-day delay in B & F's answer. Moreover, B & F is ready to defend. A meritorious defense need not be espoused to the trial judge in Rule 6(b) situtations, and B & F made it clear at oral argument that it had proceeded under Rule 6(b) for an enlargement of time in which to answer and not Rule 55(c). All of these factors militate in B & F's favor; none were considered by the trial judge on the record.

The case cited by the majority supports this position. *See Stuski v. United States Lines*, 31 F.R.D. 188 (E.D. Pa. 1962). There, two complaints were involved and, as in the present case, the second complaint was not forwarded to counsel due to a

---

[1] Rule 6(b) and Rule 55(c) were both amended by the same Per Curiam Order to include "mistake," "inadvertence," and "surprise."

mistaken belief that the complaints were duplicative. However, one complaint was filed in state court and one was filed in federal court. Facially, the two complaints were contradictory as in the present case. Nevertheless, the district court set the default aside.

The trial judge has wide discretion in these matters, a point which I readily concede. But, here, it appears clear that the trial judge used the old standard of excusable neglect in reaching his decision.[2] Had he found that B & F had concocted its defense for failure to answer after the fact, this would take the mistake out of the good-faith category. But the judge did not make such a finding.

This is an important case, as it is the first to be decided since the 1990 amendment broadening Rule 6(b) and Rule 55(c). If that amendment is to have any meaning, this case should be reversed and remanded for a trial on the merits.

I respectfully dissent.

---

[2] The new standard, including mistake and inadvertence had been in effect for about six weeks when the judge made his decision on March 19, 1991.