Winston BRYANT, Attorney General *v.* Randall MATHIS, Director, In His Official Capacity as Director of the Arkansas department of Pollution Control & Ecology; ILV, Incorporated; Enviroclean; Envirocorp; and Arkansas Medical Services

92-369                                          839 S.W.2d 528

Supreme Court of Arkansas
Opinion delivered November 2, 1992

*Winston Bryant*, Att'y Gen., by: *Mary B. Stallcup*, Senior Asst. Att'y Gen., and *Charles L. Moulton*, Asst. Att'y Gen., for appellant.

*Rose Law Firm*, by: *W. Dane Clay*, for appellees Enviroclean and Arkansas Medical Services.

*Steve Weaver*, for appellees PC&E.

·STEELE HAYS, Justice. The Arkansas Attorney General, Winston Bryant, (Appellant) brought this action in chancery court to challenge the legal authority of the Arkansas Department of Pollution Control and Ecology (Appellee) to allow the operation of four incinerators under the Water and Air Pollution Control Act without requiring the incinerators to further comply with the provisions of the Arkansas Solid Waste Management Act or the Arkansas Hazardous Waste Management Act.

During 1990 and 1991, PC&E issued air permits to four waste incinerators. They are ILV, Inc., Enviroclean, Envirocorp and Arkansas Medical Services, Inc., all defendants below.

PC&E required the facilities to obtain permits pursuant to the Water and Air Pollution Control Act 1949 No. 472 [Part 2] [Ark. Code Ann. § 8-4-301 — 313 (1987)]. PC&E did not require permits under either the Solid Waste Act, Act 1971 No. 237 [Ark. Code Ann. § 8-6-201 -213 (1987)] or the Hazardous Waste Act, Act 1979 No. 406 [Ark. Code Ann. § 8-7-201 -226 (1987)].

On August 9, 1991, the Attorney General filed a petition for temporary injunction and declaratory judgment that "medical waste" which, he alleged, was to be disposed of by the defendant facilities, be found as a matter of law to be governed under either the hazardous or solid waste acts, or both, and that the defendant companies suspend further construction of their plants until they had obtained permits under these acts.

The appellees moved to dismiss for failure to state a claim. Ark. R. Civ. P. 12(b)(6). Dismissal was granted by the trial court, but on a number of other bases than failure to state a claim.

The Attorney General then moved to amend the judgment or alternatively for a rehearing. The Attorney General disputed the basis for the prior dismissal and the trial court again dismissed the petition but on different grounds. On January 8, 1992, the court dismissed on Ark. R. Civ. P. 12(b)(6) grounds and stated:

> This court is not generally empowered to judicially review the discretionary functions of the executive branch of government. In order for this court to acquire subject matter jurisdiction of a case such as this one, the plaintiff must establish at the threshold that the challenged actions of an executive official were *ultra vires*, arbitrary and capricious, or in bad faith.

> No party had alleged bad faith on the part of defendant Mathis, or that the actions were beyond the scope of his authority as director of PC&E.

> These premises considered, the court concludes that pursuant to Rule 12(b) of the Ark. R. Civ. P., defendant's motions to dismiss should be granted for failure to state facts upon which relief can be granted.

The Attorney General appeals from that decision, urging the trial court erred in dismissing on those grounds. The Attorney

General has limited the argument to the actions of PC&E and does not undertake specific challenges against the four incinerators.

The Attorney General argues that while medical waste is not defined under either the Solid Waste Act or the Hazardous Waste Act, it is nonetheless sufficiently manifest that the legislature intended medical waste to be permitted *only* under one or both of those acts, and that PC&E's failure to do so amounted to an *ultra vires* action. We are not persuaded by the argument.

■ First, there is no definition in either the Solid Waste Act or the Hazardous Waste Act of medical waste, nor has appellant cited any authority to show that term has become accepted as a term of art, or that it has such accepted qualities that we can take judicial notice of them.[1] Without that, we cannot determine whether the legislature intended the term to be encompassed only within the Solid Waste or Hazardous Waste Acts. We are left to speculate both as to what constitutes medical waste and whether the legislative intent was to include medical waste only within the solid or hazardous waste acts. In that framework we have no basis for finding the decision by PC&E to grant permits to these facilities under the Air Pollution Control Act and not under either the solid or hazardous waste acts, to be an *ultra vires* act, or contrary to law. *See Cammack* v. *Chalmers*, 284 Ark. 161, 680 S.W.2d 689 (1984).

Equally important, even if there were some agreement as to the meaning of medical waste, when the Solid and Hazardous Waste Acts are read in their entirety, along with their predecessor, the Water and Air Pollution Control Act, it is clear the legislature left the management of a newly recognized category of waste to the discretion of the PC&E.

---

[1] While the petition states that the four incinerators involved were permitted to incinerate "medical wastes," we do not know what is included in that term for each of the particular incinerators. In fact, paragraph 22 of appellant's petition alleges (without authority) that "traditionally, the term medical waste has not been limited to just pathological or infectious waste and has included paper, cardboard, plastic, rubber, food waste cans, bottles . . . ."

### The Solid Waste Act

The Water and Air Pollution Act of 1949 contains broad definitions of pollutants, which would arguably include medical waste, however that term might ultimately be defined. *See* Ark. Code Ann. § 8-4-303 (1987). The legislature, however, saw the act as inadequate to cover the monitoring of all recycling and waste disposal problems (*See* Emergency Clause to the Solid Waste Act of 1971, No. 237) and adopted the Solid Waste Act in1971. In this act, in addition to greater specificity in other provisions in the act, "solid wastes" are defined more specifically than were pollutants in the previous Water and Air Act. Appellant relies on this and points to the definition of solid wastes at Ark. Code Ann. § 8-6-203 (1987), which includes "pathological wastes" as one of the substances included in that definition. Appellant then argues that pathological and medical wastes are sufficiently similar, that solid waste was intended by the legislature to include medical waste.

■ While it is not unreasonable to assume that pathological waste may have been intended to include medical waste, the problem is that the appellant has not persuaded us that the legislature intended the Solid Waste Act to be the sole means for monitoring waste disposal to the exclusion of earlier statements on the same subject. In fact, in the Solid Waste Act itself, the legislature has *expressly* stated otherwise.

The legislature expressly states in Ark. Code Ann. § 8-6-208 (1987), that the Air Pollution Act, and any actions taken under it by PC&E, are not limited or superseded by the Solid Waste Act, and all regulations in place at the time of the act were to stay in place "until superseded by actions taken by the commission under this subchapter." No deadline is set by the act for the PC&E to make such changes.

*Section 8-6-208* in its entirety provides:

(a) *All existing rules and regulations of the Arkansas Pollution Control and Ecology Commission relating to subjects embraced within this subchapter shall remain in full force and effect until expressly repealed, amended, or superseded by the commission.*

(b) All orders entered, permits granted, and pending

legal proceedings instituted by the commission relating to subjects embraced within this subchapter shall remain unimpaired and in full force and effect until superseded by actions taken by the commission under this subchapter.

(c) No existing civil or criminal remedies, public or private, for any wrongful action shall be excluded or impaired by this subchapter. *Nothing in this subchapter shall be construed to limit or supersede the provisions of the Arkansas Water and Air Pollution Control Act, as amended, chapter 4 of this title, or any action taken by the commission under it.* [Our emphasis.]

### The Hazardous Waste Act

In the decade after the adoption of the Solid Waste Act, as concerns over waste disposal increased, the inadequacy of existing measures led the legislature to adopt the Hazardous Waste Act of 1979. *See* Emergency Clause to that act. The definition of hazardous waste is more specific than the definitions for solid waste or air pollutants, *see* § 8-7-203(6). Also, unlike the Solid Waste Act, the Hazardous Waste Act provides that if there is any conflict between the Hazardous Waste Act and either the Solid Waste Act or Air Pollution Act, the Hazardous Waste Act controls. *See* § 8-7-210.

■ It follows, if medical waste is included in hazardous waste, a stronger argument emerges that PC&E has no discretion over the issuance of hazardous waste permits. The hazardous waste permit would be mandatory. However, before that step is reached, it must first be decided if a particular facility is handling hazardous waste as that term is defined by the act. The critical factor here is that the legislature has stated that it is "in the judgment of the department" as to what substances would cause particular harm to the populace or environment and therefore, be "hazardous." That provision, § 8-7-203, reads:

(6) *"Hazardous waste" means any waste or combination of wastes* of a solid, liquid, contained gaseous, or semisolid form *which,* because of its quantity, concentration, or physical, chemical, or infectious characteristics, *may in the judgment of the department*:

(A) Cause or significantly contribute to an increase

in mortality or an increase in serious irreversible or incapacitating reversible illness; or

(B) Pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise improperly managed. Such wastes include, but are not limited to, those which are radioactive, toxic, corrosive, flammable, irritants, or strong sensitizers or those which generate pressure through decomposition, heat, or other means;

■ It is clear the legislature intends both the solid and hazardous waste acts to allow the PC&E, within certain guidelines, to determine what substances are permitted under those acts. Nothing cited by the appellant would support a finding that the decision by PC&E in this case in permitting a category of waste not defined in any of the acts was an abuse of discretion and certainly not an arbitrary or *ultra vires* act.

It should be noted that the Attorney General does not contend, for these particular incinerators, that PC&E incorrectly found their particular wastes did not constitute solid or hazardous waste under the acts. Rather, the Attorney General has argued, in essence, that anything that is termed medical waste, by anyone, will automatically be required to be classified as hazardous waste or solid waste under our acts.

We also note that appellant did not show any irreparable harm. While the Attorney General argues that medical wastes generally could potentially cause serious and irreparable harm, he failed to allege that the particular medical wastes in these cases were of such a nature, or that, whatever wastes were being incinerated, were not being sufficiently monitored and controlled under the air permit requirements.

For the reasons stated, the judgment is affirmed.